77926. BARNES et al. v. GENERAL MOTORS ACCEPTANCE CORPORATION.
(381 SE2d 146)

BIRDSONG, Judge.

The appellants, Jerry and Wayne Barnes, d/b/a Barnes Brothers Auto Body Repair, repaired a wrecked automobile belonging to Ann Burson, with respect to which the appellee, General Motors Acceptance Corporation (GMAC), held a perfected security interest. Appellants had constructive notice of GMAC's security interest before commencing repairs. Burson abandoned the vehicle at the appellants' body shop without paying for the repairs, and GMAC subsequently sought to foreclose its security interest by obtaining a writ of possession on the vehicle. The appellants responded by asserting a mechanic's lien against the vehicle for the value of the repairs (alleged to be $8,200) and by asserting a counterclaim against GMAC based on unjust enrichment. The trial court subsequently granted GMAC's request for the writ of possession, reserving the appellants' counterclaim for later adjudication.

The appellants contend that subsequent to the issuance of the writ of possession but prior to its execution, they advised GMAC that unless it paid their repair bill, they would remove the repair parts which they had affixed to the vehicle. They further contend that, in order to induce them not to take such action, GMAC promised to assert a third-party claim against Ms. Burson's motor vehicle insurer to recover the cost of the repairs. GMAC did in fact initiate such a claim, however, it dismissed the claim after obtaining possession of the vehicle, in apparent response to an abusive litigation claim filed against it by the insurer. Thereafter, the trial court granted summary

judgment to GMAC in the present action based on a determination that its security interest was superior to the appellants' mechanic's lien. This appeal followed. *Held*:

1. GMAC has moved to dismiss the appeal on the ground that a cross-claim filed by the appellants against Ms. Burson remains pending in the court below. This motion is denied. "An order granting summary judgment *on any issue or as to any party*" is always subject to review by direct appeal. OCGA § 9-11-56 (h). (Emphasis supplied.) See *Edwards v. Davis*, 160 Ga. App. 122 (286 SE2d 301) (1981); *McMullan v. Georgia Girl Fashions*, 180 Ga. App. 228 (1) (348 SE2d 748) (1986).

2. GMAC contends that the appellants' counterclaim is not cognizable because they never filed their responsive pleadings with the clerk of the trial court. However, GMAC attached a copy of the appellants' answer and counterclaim to the third-party complaint which it filed against Ms. Burson's insurer, and it also filed an answer to the counterclaim, following which the merits of the claim were litigated in the trial court without objection. Pursuant to OCGA § 9-11-15 (b), issues which are not raised by pleadings but which are tried by express or implied consent of the parties are "treated in all respects as if they [were] raised in the pleadings." Under the circumstances, GMAC will not be heard to argue for the first time on appeal that the trial court erred in reaching the merits of the counterclaim.

3. The appellants concede that GMAC's properly perfected security interest in the vehicle was superior to their mechanic's lien. Appellants contend that GMAC's security interest did not extend to the repair parts which they installed in the vehicle and that GMAC recognized this fact by agreeing to pursue a claim against Ms. Burson's insurer for the cost of the repairs in order to dissuade them from removing the parts.

At the onset we note that any alleged promises made by GMAC to appellants, and supported by the record, were at least substantially fulfilled by GMAC. Further, any factual assertions contained in briefs of parties which are unsupported by evidence of record will not be considered on appellate review. *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 846 (366 SE2d 223).

Security interests and mechanic's liens in motor vehicles are governed by the Motor Vehicle Chapter of the Georgia Code, OCGA § 40-3-50 et seq. With certain exception not here applicable, this statutory scheme is the *exclusive method* and procedure of perfecting or executing any lien or security interest with respect to motor vehicles. OCGA §§ 40-3-53 (f); 40-3-54 (a); 40-3-58; 40-3-59. Clearly, the state legislature intended to provide a simple statutory lien procedure upon which those both financing and repairing motor vehicles could rely when conducting daily business. This statutory procedure did not en-

graft upon itself, as the dissent would do, common law principles of accession or the complex and multi-faceted procedures of the Uniform Commercial Code. See, e.g., OCGA §§ 40-3-53 (f); 40-3-54 (a); 40-3-58.

OCGA § 40-3-50 (a) expressly provides that "the *security interest* in a vehicle of the type for which a certificate of title is required shall be perfected and *shall be valid against subsequent creditors of the owner . . . and the holders of* security interests and *liens* on the vehicle by compliance with this chapter." (Emphasis supplied.) Further, OCGA § 40-3-50 (b) states that "[w]hen the security interest is perfected as provided for in this subsection, *it shall constitute notice to everybody* of the security interest of the holder." (Emphasis supplied.) Thus, by operation of law, the security interests granted in the security agreement are valid, unless said terms otherwise were found to violate the public policy of this State. OCGA § 40-3-50; see generally OCGA § 13-8-2. The security agreement in this case pertinently provided that "[y]ou [Ann Burson, the motor vehicle owner] are giving the Creditor [GMAC] a security interest in the vehicle . . . and any accessories, equipment and replacement parts installed in the vehicle." Further, it provides that if the vehicle is repossessed "[a]ny accessories, equipment or replacement parts will remain with the vehicle." Thus, the giving of the security interests to after-acquired parts and repairs, to remain with the vehicle, is the giving of a property right to another as additional collateral to satisfy the debt, of which Barnes Brothers had *lawful* constructive notice, OCGA § 40-3-50, *before* it placed the parts on the vehicle.

Judge Benham, in *Hull v. Transport Acceptance Corp.*, 177 Ga. App. 875, 877 (341 SE2d 330), together with two other learned judges of this court stated, "[t]hat certificate of title provided constructive notice to *future creditors* that the motor vehicle was encumbered by a security interest in favor of the appellee. Therefore, appellee's *first* security interest was superior to appellants' *later* asserted mechanic's lien." (Emphasis supplied.) To this sage quote we only insert the words "claim of unjust enrichment" in lieu of the words "mechanic's lien."

The dissent opines that this case is controlled by *Austrian Motors v. Travelers Ins. Co.*, 156 Ga. App. 618 (275 SE2d 702). The facts of *Austrian Motors* are distinguishable from the facts of this case. *Austrian Motors* did not involve a situation where a mechanic was claiming against a prior perfected superior interest holder, but concerned a mechanic's claim against an insurance company as assignee of its insured, the true vehicle owner. *Austrian Motors*, supra at 619. Further, unlike the dissent implies, we do not find Barnes to be "innocent," but rather, more closely akin to a volunteer with notice.

Appellants conceded GMAC's properly perfected security inter-

est in the vehicle. Yet, the dissent would hold, in essence, that appellants may recover for the value of parts affixed to the vehicle. Such a contention is not compatible with the clear meaning of OCGA § 40-3-54 (a). OCGA § 40-3-54 (a) provides, that "[a]ll mechanics of every sort shall have a special lien on any vehicle required to have a certificate of title . . . *for work done, or for work done and materials furnished, or for materials furnished* in repairing or servicing such vehicle. . . . *Such special lien[s] shall be superior* to all liens *except for* taxes and such other liens and *security interests of which the mechanic had actual or constructive notice* before the work was done or material furnished. The validity of the lien against third parties shall be determined in accordance with this Chapter." (Emphasis supplied.)

This Code section clearly states that mechanics shall have a lien on the vehicle for *parts and labor*. The lien, however, is subordinate to prior perfected security interests. The dissent would say that appellants may recover for the value of the readily detachable parts they affixed. The effect of such a holding would allow a mechanic to have a superior claim to the vehicle for the value of the parts (not labor) that the mechanic places on the vehicle, notwithstanding the existence of a prior perfected security interest. Such a holding is in contradiction to the unambiguous language of OCGA § 40-3-54 (a) and would create a distinction between the value of parts and labor, which was clearly rejected by the terms of the statute. The statute treats lien rights for parts and labor as one and the same.

Our opinion preserves the integrity of the lien law of this State.

*Judgment affirmed. Carley, C. J., Deen, P. J., Sognier and Beasley, JJ., concur. McMurray, P. J., Banke, P. J., Pope and Benham, JJ., dissent.*

BANKE, Presiding Judge, dissenting.

There is no denying that GMAC has been unjustly enriched at the expense of the appellants in this case. Through their expenditure of money and labor, the appellants restored value to a wrecked vehicle, only to see that value appropriated by GMAC in satisfaction of a pre-existing indebtedness owed by the titular owner of the vehicle. It is, of course, true that the appellants had constructive notice of the existence of GMAC's security interest at the time they performed the repairs, in the sense that the interest was a matter of public record. However, there has been no contention that they were acting in anything other than the utmost good faith in performing the repairs.

The appellants concede the superiority of GMAC's security interest over their mechanic's lien and further concede that, as a result of the superiority of the security interest, they have no cause of action against GMAC for the value of their labor. However, in reliance on

this court's decision in *Austrian Motors v. Travelers Ins. Co.*, 156 Ga. App. 618 (275 SE2d 702) (1980), they contend that the law should not and does not require them to enrich GMAC with free replacement parts. I agree.

In the *Austrian Motors* case, an auto repair shop had performed repairs on a vehicle which, unbeknownst to it, was stolen. The vehicle was later seized by police and ultimately claimed by an insurance company, which had acquired title by assignment from its insured. The repair shop instituted an action against the insurer to recover for the "parts, labor and tires" which had gone into the repair of the vehicle. This court held that although the repair shop could not recover for its labor, it did have a claim against the insurer for conversion of any readily detachable repair parts which it may have affixed to the vehicle. The court reasoned as follows: "Upon a careful consideration of the decisions reached in other jurisdictions on the question, we find the better reasoned rule and the rule which should be followed in this state to be that an innocent trespasser loses his title to personal property which has been attached to that rightfully belonging to another only to the extent that his property may not be readily detached and returned to him without injury to the whole. This is but another way of saying that the owner of personal property to which an innocent trespasser has attached his own personal property acquires title to the latter by accession only to the extent that such additions become 'such an integral part' of the former and is 'of such a nature' and 'so attached to it' as to constitute 'one and the same thing.' (Cits.) We find such a rule preferable under the circumstances so as to avoid the imposition of an unfair loss upon the innocent trespasser and the consequent unjust enrichment to the true owner of the property to which the attachments are affixed." Id. at 621.

Having articulated this rule, the court went on to hold in the *Austrian Motors* case that, except for the paint job which had been applied to the vehicle (which was conclusively determined to be an accession) and the replacement tires and wheels (which were conclusively determined not to be accessions), factual questions remained as to "what personal property of [the repair shop], if any . . . was not lost by accession through attachment to the automobile and may have been converted when [the vehicle was] sold by [the insurer]." Id. at 622.

Of course, the appellants in the present action were not acting as trespassers, innocent or otherwise, in performing the repairs on the vehicle but were contractually authorized by the owner to perform the repairs. This distinction, however, should serve to strengthen their legal position rather than to weaken it. I cannot agree with the majority's conclusion that the appellants' rights in this connection are defeated by the language of the security agreement giving the appellees

a security interest in "any accessories, equipment and replacement parts installed in the vehicle." While this language was certainly effective to transfer to GMAC a security interest in all after-acquired accessories, equipment, and replacement parts belonging to the debtor, no language would have been effective to enable the debtor to transfer a security interest in property owned by someone else. Under the *Austrian Motors* decision, GMAC was no more entitled to claim a security interest in the readily detachable replacement parts affixed to the vehicle by the appellants in this case than it would have been entitled to claim a security interest in, say, a watch or radio inadvertently left inside the vehicle by one of the appellants' employees. Indeed, it would appear that GMAC acknowledged the validity of the appellants' claim to the replacement parts by agreeing to pursue a claim against the casualty insurer for the appellants' repair bill in return for their agreement not to remove the replacement parts.

I would hold that material issues of fact remain to be decided with respect to the appellants' counterclaim in this case and that the trial court accordingly erred in granting GMAC's motion for summary judgment.

I am authorized to state that Judge Pope and Judge Benham concur with this dissent.

DECIDED MARCH 31, 1989.

*Lee R. Hasty*, for appellants.
*Ernest Kirk II*, for appellee.