75721. BEHAR v. AERO MED INTERNATIONAL, INC.
(366 SE2d 223)

BIRDSONG, Chief Judge.

This is an interlocutory appeal from an order of the State Court of Chatham County denying appellant's motion to dismiss on the grounds of lack of personal jurisdiction of appellant. *Held*:

1. In this appeal certain *allegations* of fact are found only in the briefs of the respective parties or in their unverified pleadings. In determining whether this court should consider the factual allegations contained in the briefs and pleadings of the parties, which are not otherwise supported by the trial record, the following principles apply.

A motion to dismiss for lack of personal jurisdiction is a motion in abatement and not a motion in bar. *Hemphill v. Con-Chem*, 128 Ga. App. 590, 591-592 (197 SE2d 457); see *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614 (208 SE2d 459); *Myers v. McLarty*, 150 Ga. App. 432, 433 (258 SE2d 56). Thus, motions to dismiss for lack of personal jurisdiction cannot be disposed of as motions for summary judgment. Id. The proper procedure in disposing of matters in abate-

ment before trial is found in OCGA §§ 9-11-12 and 9-11-43. *Ogden Equip.*, supra at 615. Motions to dismiss for lack of jurisdiction over the person, OCGA § 9-11-12 (b) (2), when tried on affidavits pursuant to OCGA § 9-11-43 (b), do not become motions for summary judgment. See *McPherson v. McPherson*, 238 Ga. 271 (1) (232 SE2d 552). However, affidavits made in support of OCGA § 9-11-12 (b) motions must conform to the requirements of OCGA § 9-11-56 (e). Although the requirements of OCGA § 9-11-56 (e) are not expressly applicable to affidavits in general, those requirements stand as a codification of the common law requirements as to affidavits and hence are applicable as such. Id. In addition to the use of affidavits, a matter admitted under OCGA § 9-11-36, unless duly withdrawn or amended, conclusively establishes such matter. OCGA § 9-11-36 (b). These admissions, being in the nature of evidence and relating to the proof, can be considered by the factfinder upon being introduced in evidence. *Brooks v. Roley & Roley Engineers*, 144 Ga. App. 101 (1) (240 SE2d 596); *Warner Robins Tree Surgeons v. Kolb & Co.*, 181 Ga. App. 20 (1) (351 SE2d 486).

Regarding factual representations contained in the briefs of parties which are not supported by evidence of record, the appellate courts of this state have consistently held that such unsupported factual assertions cannot be considered in the appellate process. See *Coweta Bonding Co. v. Carter*, 230 Ga. 585 (1) (198 SE2d 281) (appeal from the denial of a motion to set aside the forfeiture of a criminal appeal bond and a restraining injunction); *Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240 (2) (276 SE2d 845) (jurisdiction — long arm statute); *Konscol v. Konscol*, 151 Ga. App. 696 (1) (261 SE2d 438) (appeal from a support order). This rule clearly applies to the unsupported assertions of fact contained in the briefs of these parties. Id.

As a general rule, allegations contained in pleadings do not constitute evidence nor are they to be accepted as true except to the extent they are admitted by the opposite party to be true. *Crane v. Doolittle*, 116 Ga. App. 572 (2) (158 SE2d 426). Thus, in *Coopers & Lybrand v. Cocklereece*, supra at 245, this court held that personal jurisdiction over the defendant Coopers & Lybrand was not established by the evidence of record, noting that the plaintiff, Cocklereece, "[a]t best . . . has made *allegations in his pleadings* and arguments in his briefs. . . ." (Emphasis supplied.)

Further, OCGA § 9-11-56 (e) contains the following requirement regarding forms of proof in resolving summary judgment issues, "an adverse party may not rest upon the *mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial." (Emphasis supplied.) We believe that this

statutory requirement is no less applicable to motions to dismiss on the grounds of lack of personal jurisdiction than are the affidavit requirements also found in this subsection. See generally *McPherson v. McPherson*, supra, regarding the applicability of Rule 56 (e) affidavit requirements to affidavits used in support of Rule 12 (b) motions.

We are aware of no sound reason for not applying the same rule applicable to unsupported factual allegations in briefs to the mere allegations of facts contained in unverified pleadings but not otherwise supported in the record. Factual assertions contained in unverified pleadings, which do not require a responsive pleading, remain mere allegations of fact, unless they are duly admitted by the opposing party. But, factual assertions contained in unverified pleadings, which do require a responsive pleading, are *admitted* when not denied in the responsive pleading. See generally OCGA § 9-11-8 (d). Accordingly, this court will not consider mere allegations of fact found in the parties' pleadings. However, we believe that it is in the interests of judicial economy to consider as evidence in resolving motions in abatement those factual matters duly *admitted* during pleadings under the above procedures. We are satisfied that this rule will insure that evidence of such character is equal in quality as to truth as is that evidence expressly referred to in OCGA § 9-11-43. We need not resolve at this time the evidentiary value of facts asserted in a verified pleading which either are not admitted or are denied by the opposing party. We will apply these principles to aid us in the proper disposition of this case.

2. Appellant enumerates as error that the trial court erred in denying appellant's motion to dismiss based on lack of personal jurisdiction.

The record establishes the following facts. Appellant is 77 years of age, has an eighth grade education, is retired, and resides in the state of Pennsylvania. In July 1986, appellant took a cruise aboard the Carnival Cruise Lines, MS Holiday. During the voyage, appellant suffered a stroke. Initially, he was treated by the ship's doctor who advised the appellant that his medical condition was serious, that nothing could be done for him aboard ship, and recommended medical evacuation by plane. The doctor advised appellant and his traveling companion (an attorney from Israel) that the cost of medical evacuation would be between $8,000 and $10,000. The doctor also advised the appellant that the latter would be billed at home for the medical evacuation and that a doctor would be aboard the plane to accompany appellant on the flight home. As a result of the stroke, appellant was suffering from "complete left lower extremity paralysis." It was under these circumstances that appellant agreed to the doctor's recommendations for medical evacuation by air. Thereafter the ship's doctor apparently contacted appellee and arranged for ap-

pellant's medical transport home. The ship's medical log contains the following confirming entry, "[p]lan: [t]o be flow via AeroMed to Allentown, Pa. tomorrow on arrival at St. Maarten."

When the ship anchored at St. Maarten, appellant and his traveling companion were taken to the airfield. At the airfield, a plane and two pilots (one of whom apparently was a co-pilot) and a nurse were waiting. Apparently, this plane and crew had been arranged by the appellee based upon phone negotiations conducted by an agent of the appellee and the ship's doctor or some person on the ship other than appellant and his traveling companion. Appellee is a Georgia corporation and it may be inferred from the trial record that the phone conversation resulted from a call being initiated aboard the ship to the appellee's agents in Georgia.

Upon appellant's arrival at the airfield, by ambulance and on a stretcher, the pilot presented appellant's traveling companion and apparently the appellant with a bill for the medical evacuation in the amount of $15,560. Both appellant and his traveling companion informed the pilot what the ship's doctor had said about the cost of the flight. The cost of the services was still being disputed when appellant's traveling companion informed the pilot that the crew would be responsible for the health of appellant and for any delay caused by their argument about costs. The pilot then took appellant airborne but once in the air continued to argue about the flight costs. Apparently no satisfactory resolution of the costs was reached as the pilot landed the airplane at Nassau, and stated that the plane would not proceed further unless appellant agreed to pay them the amount of $15,560. Subsequently, the pilot said that he had been in contact with his supervisor who agreed that the plane should not proceed with the flight. Appellant became very excited and his blood pressure rose. At some point the nurse spoke with the pilots when he was talking on the phone with his office. The pilot then stated that they would continue the flight provided that payment was received within 24 hours. Thereafter, either appellant or his traveling companion replied that they would report the matter to the public health authorities; in any event following a one-hour delay in Nassau, the plane proceeded to fly appellant to Pennsylvania. Throughout the entire flight, appellant was never physically present in the state of Georgia. At the conclusion of the flight, a $5,000 check was tendered on behalf of the appellant allegedly in payment for the flight costs.

The appellee brought suit against appellant based on theories of both breach of contract and tort (fraud), and avers that jurisdiction exists under the long-arm statute of this state, OCGA § 9-10-91 (1) and (3).

We find the case of *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) to be dispositive. In that case, the Supreme Court reversed the decision

of this court in *Flint v. Gust*, 180 Ga. App. 904 (351 SE2d 95), holding that "[t]he unrebutted affidavits filed in support of the out-of-state defendants' motion to dismiss clearly establish that the defendants have done none of the acts set forth in OCGA § 9-10-91 which must be done in order to subject them to personal jurisdiction of a Georgia court." Id. at 130. The facts of this case reflect that Flint, a Georgia resident, responded to an advertisement printed in a trade paper published outside the state but mailed to Flint in Georgia. Flint, responding to the ad, personally contacted the defendants by telephone and a bargain was struck between the parties at that time. Pursuant to the terms of the bargain, Flint sent the defendants a $6,000 deposit. After the defendants received the deposit, they stated they could not deliver the truck and trailer ordered and attempted to switch a substitute therefor. When Flint refused to accept the substitution offered, the defendants refused to return his deposit. Flint filed suit in Georgia, and the defendants moved to dismiss the complaint alleging that they were not subject to personal jurisdiction under the Georgia long-arm statute. In support of their motion, defendants filed an affidavit, that was not traversed, showing in pertinent part that the defendants (a) did not regularly do business or solicit business within Georgia; (b) did not engage in any persistent course of conduct in Georgia; and (c) did not derive substantial revenue from services rendered with the state of Georgia. The affidavit submitted by the appellant in this case, together with the uncontested facts, and reasonable inferences therefrom, contained in the medical records properly before this court and the letters of appellant's traveling companion, establish substantially the same relevant evidence for purposes of resolving the question of jurisdiction as was before the Supreme Court in *Gust v. Flint*. Accordingly, we find that the record before us clearly establishes that none of the required acts set forth in OCGA § 9-10-91 has been done by the appellant in this case, and that therefore personal jurisdiction is lacking over the appellant. Conversely, we find that the facts of this case are distinguishable from those found in *Shellenberger v. Tanner*, 138 Ga. App. 399 (227 SE2d 266) and that *Shellenberger* is not dispositive of the issues raised by the unique facts before us.

Further, subsections (1), (2) and (3) of OCGA § 9-10-91 all require that in order to subject the nonresident defendant to the jurisdiction of Georgia courts, it must be established that the nonresident had "minimum contacts" in this state so that the exercise of jurisdiction is consistent with " 'traditional notions of fair play and substantial justice.' " *Yarbrough v. Estate of Yarbrough*, 173 Ga. App. 386, 387 (326 SE2d 517), citing *International Shoe Co. v. State of Washington*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95); see *Davis Metals v. Allen*, 230 Ga. 623, 625 (198 SE2d 285). Notwithstanding other rele-

vant considerations, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 474 (105 SC 2174, 85 LE2d 528). It is critical to this due process analysis that the nonresident defendant's " 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " Id. Generally, a potential defendant should " 'reasonably anticipate' out-of-state litigation" when it is shown that there was some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Id. at 474-475. As stated in *Burger King*, "[t]his 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. . . ." Id. at 475. Although it is true that "[s]o long as it creates a 'substantial connection' with the forum, even a single act [by the nonresident defendant] can support jurisdiction," nevertheless " 'some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." Id. at 475, fn. 18. "This distinction derives from the belief that, with respect to this category of *'isolated'* acts, [cit. omitted] the reasonable foreseeability of litigation in the forum is substantially diminished." (Emphasis supplied.) Id. at 476, fn. 18.

Applying these principles to the facts of this case, we are satisfied that in view of the posture of the record before us, the telephone contact that someone on board ship (other than the appellant and his traveling companion) had with the Georgia based appellee did not create a "substantial connection" with the forum within the meaning of *Burger King*.

Further, assuming arguendo that the appellant had duly constituted the ship's doctor as his agent to arrange his medical evacuation, that the ship's doctor did not exceed the scope of his authority in negotiating a medical evacuation contract with appellee that substantially exceeded the cost estimate which the doctor had given the appellant, and that a binding contract was formed during the telephone conversation between the doctor and the Georgia based appellee, we nevertheless are convinced that under the unique and extenuating facts of this case, the appellant had only an " 'attenuated' affiliation" and not a "substantial connection" with the forum in this instance. Thus, we are satisfied that the appellant, under these trying circumstances, could not reasonably foresee being haled into a court of this sovereign state.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 16, 1988.

George L. Lewis, for appellant.
George M. Hubbard III, for appellee.