A91A1908. KLEIN v. ALLSTATE INSURANCE COMPANY.
(413 SE2d 777)

BIRDSONG, Presiding Judge.

Appellant Michael Klein appeals from the order of the trial court granting appellee/defendant's motion to dismiss.

Appellant was injured while a passenger in his father's car, which was involved in a collision with a car whose driver was from Tennessee. The collision occurred on an interstate highway in Georgia. Appellant and his father are both nonresidents of Georgia. The car was insured by appellee, Allstate Insurance Company (Allstate), which does business in the state of Georgia and has an agent and a place of business in the county where the accident occurred. Appellant brought suit, based on an action ex contractu, alleging Allstate had failed to pay certain medical expenses, as required by Georgia law, under the personal injury protection (no-fault) coverage of the policy. Allstate asserts a lack of jurisdiction claiming the Georgia long arm statute does not apply because the policy was issued on the automobile in New Jersey, both appellant and his father are Georgia nonresidents, and appellee and its agents have conducted no business in this state in regard to the policy in question. In its motion to dismiss appellee Allstate alleged it is an Illinois corporation and not subject to suit as the insurance contract was not issued in this state and appellant does not reside herein. The trial court concluded it lacked juris-

diction, as the suit involved a foreign corporation with respect to a claim made by a nonresident of Georgia under a contract made in a foreign state. *Held*:

1. Appellant asserts, inter alia, that personal jurisdiction exists under the provision of OCGA § 33-4-1 (2). This statute is a venue statute (see *George Washington Life Ins. Co. v. Peacock*, 90 Ga. App. 296, 298 (82 SE2d 875); Jenkins and Miller, Ga. Auto. Ins. Law (rev. ed.), § 28-2), and does not operate to confer personal jurisdiction over the legal entity of a particular insurer. Appellant also contends the trial court erred concluding that the Georgia Motor Vehicle Accident Reparations Act was inapplicable because the vehicle was not required to be registered in this state. We do not construe the footnote of the trial court, found in its order, to constitute such a firm holding as attributed to it by appellant; however, assuming arguendo the court so held, we find any resulting error harmless, as this conclusion examined in context was mere surplusage and but tangentially related to the controlling issue of jurisdiction.

2. Appellant cites *Louisville &c. R. Co. v. Meredith*, 194 Ga. 106 (21 SE2d 101), in support of his contention that the trial court's holding was contrary to law. Compare *Southern R. Co. v. Parker*, 194 Ga. 94 (21 SE2d 94). However, *Parker* and *Louisville* were decided before the "minimum contact" test was announced in *International Shoe Co. v. State of Washington*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95). "Corporate presence can only be manifested by corporate activity and therefore a minimum contacts analysis seems appropriate" in the disposition of the issue of personal jurisdiction over a foreign corporation (*Humphrey v. Langford*, 246 Ga. 732, 733 (273 SE2d 22); compare *Aiken Asphalt &c. Co. v.Winn*, 133 Ga. App. 3, 5 (2 b) (209 SE2d 700) (evidence demanded a finding appellant was "doing business" in this state)). And, "notwithstanding other relevant considerations, the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 474 (105 SC 2174, 85 LE2d 528)." (Punctuation omitted.) *Behar v. Aero Med. Intl.*, 185 Ga. App. 845, 849-850 (2) (366 SE2d 223).

In determining "minimum contact" this court must also take cognizance of the applicable provisions of the Georgia long arm statute (OCGA § 9-10-91) and due process considerations. Thus, we must determine whether Allstate was "doing business" in this state to the extent that it met "minimum contact" due process requirements, thereby satisfying both OCGA § 9-10-91 (1) and constitutional considerations for cases involving foreign corporations as defendants in ex contractu cases. Examination of recent appellate court precedent reflects a certain lack of uniformity of language in establishing parameters for a "minimum contacts" analytical model. Compare *Beasley v.*

*Beasley*, 260 Ga. 419, 421-422 (396 SE2d 222) with *First United Bank v. First Nat. Bank*, 255 Ga. 505, 506 (340 SE2d 597). However, compatible with the trend toward abolition of the classic "doing business" test (see generally 36 AmJur2d, Foreign Corporations, §§ 471-473), our courts to the extent allowed by our long arm statute have placed an ever increasing emphasis on the "minimum contacts" test, which adequately insures that litigating a particular action will not offend traditional notions of fair play and substantial justice.

In *Beasley*, supra at 421, it was concluded that "[d]ue process requires that individuals have *'fair warning* that a particular activity may subject them to the jurisdiction of a foreign sovereign.'" (Emphasis supplied.) Harmonizing the precedent of *Beasley* and *First United Bank*, we find that in evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has *purposefully* done some act or consummated some transaction to avail himself of the law of the forum state; (2) the claim is related to those acts or transactions, or otherwise arises from or is connected with such acts or transactions; thus, under this second prong, the claim basically will arise out of, result from, or be reasonably linked to defendant's forum related activities; and, (3) the exercise of jurisdiction is reasonable, that is, it does not offend notions of fair play and substantial justice. Most importantly, however, "[t]hese three elements do not constitute a due process formula, but are helpful *analytical tools* which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." (Emphasis supplied.) *Beasley*, supra at 421; compare *Behar*, supra. The three-prong test is not to be applied inflexibly, but is to be used to assist the jurist in determining whether the requisite "fair warning" of due process has been given.

In cases such as this, arising out of actions ex contractu, "an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant has purposefully established minimum contacts with the forum." (Citations and punctuation omitted.) *Signet Bank/Virginia v. Tillis*, 196 Ga. App. 433, 435 (396 SE2d 54).

Automobile insurance policies are relatively unique, as they "do not have a particular place where the object of the contract is to be performed." Ga. Auto. Ins. Law, supra at § 1-3. "The protection provided by the policy follows the vehicle covered or follows the insured covered under the terms of the policy. In our mobile society it is not unusual for a Georgia court to be called upon to interpret the terms

of an insurance contract delivered in a foreign state." Id. In interpreting such contracts, the public policy of this state can at times become a paramount consideration. See *General Elec. &c. Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 348 (1) (309 SE2d 152).

Considering the above legal principles and applying thereto the facts before us we find: (1) Allstate purposefully availed itself of the laws of this state both by conducting automobile insurance business within this state and by issuing automobile policies outside this state containing coverage which would follow automobiles and/or their drivers into this state under the terms of the policies issued. Clearly a future consequence to be contemplated by this latter conduct is that incidents could transpire within this state necessitating the interpretation by our courts of policies issued outside this state, and, as required, the application of Georgia "conflicts of interest" law and public policy in resolving such issues of contract interpretation. (2) We further find that Allstate has met the second prong of this analytical *guideline*. Allstate is conducting, inter alia, an automobile insurance business within this state, and also is selling automobile insurance policies outside this state which provide certain coverage to the insured and the listed vehicle when in this state. Moreover, the business Allstate is doing in this state is inextricably linked to but a part of its overall automobile insurance venture. Further, considering that Allstate's broad-based forum activities are not merely circumscribed to its doing business within this state but extend to its execution of contracts of insurance outside this state, the contemplated future consequences of which clearly include the reasonable potential for the terms of the policy to apply to an automobile accident occurring in this state involving an Allstate insured or a covered vehicle, we are satisfied the claim in this case adequately *results from or is linked to* Allstate's broad-based *forum related* insurance activities. (3) Considering the nature of Allstate's forum related activities, the public interest of this state in requiring drivers and vehicles on our roads to be adequately insured, and the future consequences which should have been contemplated by Allstate regarding the potential of any given automobile insurance policy issued by it to require interpretation ultimately by a court of our state due to the involvement of a particular insured person or covered vehicle in an automobile accident in this state, we find that Allstate's conduct and connection with this state are such that it should reasonably anticipate being haled into court here. Accordingly, it does not offend the concept of due process to conclude that the requisite jurisdiction was obtained against Allstate, a foreign corporation, as it has obtained *fair warning* through "minimum contacts" in this state, so that the exercise of such jurisdiction is consistent with traditional notions of fair play and substantial justice. This holding is consistent with the well-established legal policy

and principle that our long arm statute "confers jurisdiction over nonresidents to the maximum extent permitted by due process." *First United Bank v. First Nat. Bank*, supra at 506.

*Judgment reversed. Pope and Cooper, JJ., concur.*

DECIDED NOVEMBER 22, 1991 —
RECONSIDERATION DENIED DECEMBER 4, 1991 — 

*W. Douglas Adams*, for appellant.

*Dickey, Whelchel, Brown & Readdick, Terry L. Readdick*, for appellee.