A93A1104. BOOKSING et al. v. HOLLEY et al.
A93A1105. CORRADO et al. v. HOLLEY et al.
(437 SE2d 857)

BEASLEY, Presiding Judge.

Corrado and others, all Ohio residents, were the shareholders of Falcon Leasing Corporation and Regal Transportation, Inc., Ohio corporations engaged in interstate trucking operations.

In March 1990, Corrado, on behalf of himself and other shareholders, engaged in negotiations in Ohio to sell the stock in these corporations and other property (collectively referred to as Regal Enterprises) to Holley, a Florida resident.

On April 10, 1990, Corrado and his accountant, attorney, and sales broker travelled to Georgia to the office of Holley's attorney to close two agreements under which Holley purchased all the stock. Corrado brought the agreements, which had been signed by the other shareholders in Ohio. Holley signed the agreements in Georgia. Various corporate documents, as well as corporate stock certificates previously signed by the other shareholders, were presented to Holley, and new certificates were prepared and presented to him. Related contracts were delivered, examined by Holley and his attorney, and signed by Holley. Some negotiations took place. In payment for the Falcon stock, $115,000 was paid to Corrado through checks drawn on

---

Ga. App. 119 (387 SE2d 9) (1989).

the attorney's trust account. In payment for the Regal stock, $320,000 was placed in escrow pending ICC approval of the sale. Checks in the latter sum were delivered to Corrado by Holley on June 12, 1990, at the law office in Ohio of Corrado's attorney on June 12, 1990.

Following the sale, Holley (according to his affidavit) assigned all of his right, title, and interest in the agreements to his sons, Brenton and Marcus. On August 22 and 23, 1991, Brenton and Marcus (by his father as guardian) filed two suits against Corrado and the prior shareholders of, respectively, Falcon and Regal. The complaints seek a total of $1,444,000 in actual damages and $600,000 in punitive damages, based upon allegations of false representations by Corrado and breach of contract.

Defendants sought a dismissal of both complaints and moved for summary judgment on the ground that the Georgia court lacks personal jurisdiction over them.

In a supporting affidavit, Corrado states that on February 21, 1991, he and the other Regal shareholders filed a complaint in an Ohio state court against Holley, his two sons, his attorney, and various corporations. It seeks rescission of the sale of Regal Enterprises and damages for fraud and breach of contract. Corrado states in his affidavit that the Ohio suit was removed to federal court, where additional necessary parties (Falcon and Regal) were joined, thereby destroying diversity; and that rather than remanding the case back to the Ohio state court, as required by 28 USCA § 1447, the federal court dismissed the action without prejudice on October 18, 1991, which necessitated refiling a new complaint in the Ohio state court.

The record only shows that an amended complaint was filed by the Ohio plaintiffs in federal district court in Ohio on October 4, 1991, and that a complaint containing the same allegations was filed in the Ohio state court on October 23, 1991. There is no documentation concerning the date on which the complaint in the Ohio state court was first filed or when the case in federal court was dismissed.

In response to defendants' motions for summary judgment, and in a supporting affidavit executed by Holley's attorney, plaintiffs asserted that no litigation in Ohio was pending when the complaints in this case were filed.

Following a hearing at which no testimony was presented, the court denied defendants' motions, finding that it has in personam jurisdiction over all defendants. The court stated at the hearing that it so ruled because this case was filed before the one in Ohio. We granted defendants' applications for interlocutory appeal. Case No. A93A1104 relates to the Falcon complaint; Case No. A93A1105 relates to the Regal complaint.

1. The defendants' motions were in abatement, not bar, and should have been adjudicated as motions to dismiss for lack of per-

sonal jurisdiction pursuant to OCGA §§ 9-11-12 (b) and 9-11-43, rather than as motions for summary judgment pursuant to OCGA § 9-11-56. *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 846 (1) (366 SE2d 223) (1988).

"Our precedents establish that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. [Cits.]" *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990). Where, as here, the court decides the motions on the basis of affidavits and documentary evidence but not oral testimony, disputes of fact contained in affidavits are resolved in favor of plaintiff. Id. Consequently, the court was authorized to find that the Georgia litigation was instituted before the Ohio litigation. Moreover, the contrary statement in defendants' affidavit is not supported by the documentary evidence on which they rely.

2. Notwithstanding other relevant considerations, the constitutional touchstone for determining whether nonresident defendants have submitted themselves to the personal jurisdiction of the courts of another state is whether the defendants purposefully established "minimum contacts." *Behar*, supra at 849-850 (2).

Under the traditional three-prong test, "minimum contacts" exist if (1) the nonresident has purposefully done some act or consummated some transaction in this state, thereby purposefully availing himself of the privilege and protection of this state's laws, (2) the cause of action arises from or is connected with such act or transaction; and (3) the exercise of jurisdiction by the courts of this state is consonant with due process notions of fair play and substantial justice. *Klein v. Allstate Ins. Co.*, 202 Ga. App. 188, 189 (2) (413 SE2d 777) (1991); *Ga. R. Bank &c. Co. v. Barton*, 169 Ga. App. 821, 822-823 (315 SE2d 17) (1984). "It is critical to this due process analysis that the nonresident defendant's 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' [Cit.]" *Behar*, supra at 850 (2).

Construing the term "transacting any business" in the Long-Arm Statute, OCGA § 9-10-91 (1), most liberally so as to uphold jurisdiction of our courts in actions arising either directly or indirectly out of nonresidents' transactions of business in this state, it has been held that the execution of a contract by an individual personally present within the territorial limits of the state is sufficient to constitute "transacting business" within the meaning of the statute. *Davis Metals v. Allen*, 230 Ga. 623, 625-626 (198 SE2d 285) (1973); *Tampa Motel Mgmt. Co. v. Stratton of Fla.*, 186 Ga. App. 135, 137 (1) (366 SE2d 804) (1988); see also *Drennen v. First Home Savings Bank*, 204 Ga. App. 714, 716 (1) (420 SE2d 376) (1992) (where nonresidents have executed contracts in other states which have had consequences in Georgia, the inquiry is not limited to the execution of the contracts

alone; prior negotiations and contemplated future consequences, plus the contract terms and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum); *Barton*, supra at 823 (a single transaction may be a sufficient basis if its effects within the forum are substantial enough whether or not the nonresident is physically present in the state).

There is no question that the acts of Corrado constituted "transacting business." *Davis Metals*, supra. That action is ascribed to the other shareholders since Corrado was acting as their agent. OCGA § 9-10-91; *Bloise v. Trust Co. Bank of Savannah*, 170 Ga. App. 405, 407 (1) (317 SE2d 249) (1984).

The Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 478 (105 SC 2174, 85 LE2d 528) (1985), did state that an individual's contract with a nonresident cannot *alone* establish sufficient minimum contacts in the other party's home forum, noting that the Court had long ago rejected "mechanical" tests and "conceptualistic theories of the place of contracting or performance." Nevertheless, the Court held that minimum contacts existed, noting that choice-of-law analysis, which focuses on all elements of the transaction and not simply on the defendant's conduct, is distinct from minimum-contacts analysis, which focuses at the threshold on the defendant's purposeful connection to the forum. 471 U. S. at 481-482.

*Beasley*, supra at 421, relied upon by defendants, amplifies *Burger King*, supra at 475 and 477, instructing that the three prongs or elements of the traditional test "do not constitute a due process formula, but are helpful analytical tools which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts . . . The first two elements are used to determine whether defendant has established the minimum contacts necessary for the exercise of jurisdiction. If a defendant has established minimum contacts, the court may then evaluate other factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution to controversies, and the shared interest of the states in furthering substantive social policies."

The defendants, through Corrado, did establish the requisite minimum contacts by executing the agreements in Georgia, thereby submitting themselves to the personal jurisdiction of the Georgia court. Also, as found by the trial court, plaintiffs filed these complaints in Georgia before the Ohio complaints were filed. The Georgia court's assumption of jurisdiction comports with due process notions of fair play and substantial justice and is not unreasonable.

3. Both OCGA § 9-11-13 (a) and Ohio Civ. R. 13 (A) provide that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. *But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action.*" (Emphasis supplied.)

When the action in Ohio was commenced, plaintiffs' claims against Corrado and the other Falcon and Regal shareholders were the subject of this pending action, thereby coming within the above exception to the compulsory counterclaim rule of OCGA § 9-11-13 (a). Defendants were not entitled to a dismissal under the "other factors" listed in *Beasley.*

*Judgments affirmed. Cooper and Smith, JJ., concur.*

DECIDED NOVEMBER 12, 1993.

*E. Kontz Bennett, Jr.,* for appellants.
*Adams & Brooks, John B. Adams,* for appellees.