A94A2135. WHITE v. ROBERTS et al.
(454 SE2d 584)

McMurray, Presiding Judge.

Plaintiffs Vickie Roberts and Benny Roberts, residents of Georgia, purchased a horse from defendants Sandy Camenzind and Jim Camenzind ("Sellers"), residents of Nebraska, paying them $7,000. Alleging that the horse as delivered "was suffering from Bilateral Navicular Disease, a condition which renders the horse lame and worthless as a show horse," plaintiffs brought suit in the Superior Court of Gwinnett County, Georgia, claiming breach of warranty and fraud. In addition to naming the sellers as defendants, the complaint also alleged that defendants Camenzind and defendant Steven A. White, D.V.M., "conspired to and did defraud the Plaintiffs by inducing them to purchase a lame horse for $7,000." Specifically, Dr. White allegedly defrauded[1] plaintiffs by assuring them that "the horse was in good condition and telling them that radiographs of the horse's front feet revealed no significant findings . . . [whereas, at the time Dr. White] possessed full knowledge the horse was not in good health and that radiographs of the horse's front feet revealed the horse was suffering from Bilateral Navicular Disease."

By way of a special appearance, Dr. White denied the material allegations. All three defendants moved for dismissal, contending that personal jurisdiction was not afforded under the Georgia Long Arm Statute, OCGA § 9-10-91. The material jurisdictional facts are undisputed. In support of his motion to dismiss, Dr. White submitted his affidavit, deposing that he is a resident of Nebraska, who has "never resided in the State of Georgia[; . . . has] never had any business contact with the State of Georgia[; . . . and does] not derive any revenue whatsoever from services rendered within the State of Georgia." He performed a physical exam of the horse at the seller's Omaha ranch, including "all standard prepurchase tests as well as some tests specifically requested by the potential purchasers of the horse." The only connection defendant ever had with Georgia was initiated by plaintiffs when they contacted him about the observed lameness. In their answers to interrogatories, plaintiffs confirmed that Dr. White was retained only because "the parties agreed to allow [defendant] Ms. Camenzind to find a vet in Nebraska to examine the horse for the

---

[1] In answers to interrogatories, plaintiffs stated they had not "alleged any malpractice and/or negligence on the part of Steven A. White, D.V.M. . . . ."

Plaintiffs."

In opposition, Vickie Roberts deposed that Dr. White sent her a copy of his report and that "in reliance on [that] report, [plaintiffs] purchased the horse from [the sellers] for $7,000." After the horse arrived in Georgia, Dr. D. B. Connolly, D.V.M., a Georgia veterinarian, diagnosed it as having bilateral navicular disease, whereupon plaintiffs telephoned Dr. White in Nebraska and requested that he send them the x-rays he had examined. Dr. Connolly reviewed Dr. White's x-rays and informed plaintiffs that these x-rays revealed the presence of bilateral navicular disease. Also, Dr. White mailed a bill for his examination to plaintiffs' residence in Georgia, although they do not claim to have paid that bill.

The trial court denied Dr. White's motion to dismiss but timely certified that order for immediate review. Defendant's application for interlocutory appeal was granted and this appeal followed. *Held*:

Plaintiffs claimed that the exercise of personal jurisdiction over Dr. White by the Superior Court of Gwinnett County, Georgia, is authorized by either OCGA § 9-10-91 (1) ("[t]ransacts any business within this state") or OCGA § 9-10-91 (2) ("[c]ommits a tortious act or omission within this state"). Defendant Dr. White contends the denial of his motion to dismiss was erroneous because he did not commit any tortious act or transact any business in Georgia.

1. " 'The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." (Cit.) . . . "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, . . . the defendant (must have) 'purposefully directed' his activities at residents of the forum, (cit.), and the litigation (must result) from alleged injuries that "arise out of or relate to" those activities. (Cit.)" (Cit.)' *First United Bank of Miss. v. First Nat. Bank of Atlanta*, 255 Ga. 505, 506-507 (340 SE2d 597) (1986)." *Signet Bank/Virginia v. Tillis*, 196 Ga. App. 433, 435 (396 SE2d 54). " '[T]his "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. . . .' [Cit.]" *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 847 (2), 850 (366 SE2d 223).

In the case sub judice, Dr. White's sole purposeful contact with Georgia consists of three separate mailings to Georgia: his report; the x-rays he had previously examined; and a bill for his services, which remains unpaid. "Mere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the 'Long Arm' statute. E.g., *O. N. Jonas Co. v. B & P Sales Corp.*, 232 Ga. 256 (206 SE2d 437) (1974)." *Wise v. State Bd. for Examination*

*&c. of Architects*, 247 Ga. 206, 208 (2), 209 (274 SE2d 544). "[W]here nonresidents have executed contracts in other states which have . . . consequences in Georgia, . . . prior negotiations and contemplated future consequences, plus the contract terms and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum [state]. [Cit.]" *Booksing v. Holley*, 210 Ga. App. 869, 871 (2) (437 SE2d 857). The fact that Dr. White intentionally mailed x-rays to plaintiffs represents only a fortuitous contact with Georgia, because he did so only in response to plaintiffs' demand after they had telephoned him in Nebraska. The unpaid bill is unrelated to the cause of action and so provides no evidence that defendant was transacting any business within Georgia. With all reasonable inferences being drawn in favor of authorizing the exercise of personal jurisdiction, the undisputed evidence shows that Dr. White had only a single attenuated contact with Georgia which was incidental to the completion of his professional services in Nebraska. The denial of defendant's motion to dismiss cannot be sustained on the ground that he was transacting business within the purview of OCGA § 9-10-91 (1).

2. Nevertheless, plaintiffs contend that personal jurisdiction over the Nebraska veterinarian is authorized by OCGA § 9-10-91 (2), because defendant committed a tort in Georgia under the analysis of *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399).

The statutory interpretation of former Code. Ann. § 24-113.1 (b) (now codified at OCGA § 9-10-91 (2)), has been superseded as of the effective date of Ga. L. 1970, p. 443, which added subsection (c) (now codified at OCGA § 9-10-91 (3)). The Supreme Court of Georgia has since held that "the relative merits of a 'New York rule' or an 'Illinois rule' [are not dispositive]. The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where . . . it is shown that no such acts were committed, there is no jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513).

The plain language of OCGA § 9-10-91 (2) authorizes the exercise of personal jurisdiction only when the non-resident defendant "[c]ommits a tortious act or omission within this state. . . ." See *McDonnell v. Roy E. Beatty & Assoc.*, 203 Ga. App. 807, 808 (1) (418 SE2d 95). In the case sub judice, it is undisputed that defendant was never in Georgia at the time any alleged fraud was committed. Accordingly, OCGA § 9-10-91 (2) is not applicable as a basis for exercising personal jurisdiction over Dr. White. Furthermore, the unrebutted evidence that Dr. White does not solicit business in Georgia or derive substantial revenue from services performed in Georgia precludes the application of OCGA § 9-10-91 (3) ("[c]ommits a tortious injury in this state caused by an act or omission outside this state"). The trial

court erred in denying defendant's motion to dismiss for lack of jurisdiction over the person. OCGA § 9-11-12 (b) (2).

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 10, 1995.

Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Timothy J. Buckley III, for appellant.

Webb, Tanner & Powell, Anthony O. L. Powell, Garner & Still, James W. Garner, for appellees.