**FRANKLIN'S SYSTEMS, INC., Plaintiff,**

v.

**Steven C. INFANTI, Defendant.**

**No. 94–C–3830.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1995.

Jeffrey Wayne Finke, Raleigh and Helms, Chicago, IL, Richard A. Gordon, Richard A. Gordon, P.C., Atlanta, GA, for Franklin's Systems, Inc.

Paul Lieggi, Law Offices of Paul R. Lieggi, Chicago, IL, for Steven C. Infanti.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Franklin's Systems seeks to enforce a judgment entered against defendant Mr. Infanti by the State Court of Fulton

County, Georgia, in the amount of $60,687.79, plus post-judgment interest at the rate of 12% per annum. This case is before the court on Plaintiff's motion for summary judgement. For the reasons cited below, the motion is GRANTED.

## BACKGROUND

Plaintiff Franklin's Systems, Inc. (Franklin's) is a Georgia Corporation engaged in the business of franchising its name and business marks to franchisees, who operate Franklin stores in various locations around the country. Each franchisee pays a franchise fee on entering into the franchise agreement, plus monthly royalties calculated as a percentage of gross billings for the continuing privilege of operating the franchise.

Defendant Steven Infanti, a resident of Illinois, noticed and responded to an advertisement for Franklin's Systems franchises in February of 1988, and requested and received by mail further information about the franchise as a business opportunity. In March of 1988, Mr. Infanti traveled to Franklin's headquarters in Georgia to tour the plant and discuss a possible franchise with Franklin's officials. In April, he returned to Georgia to sign a franchise agreement and undertake mandatory training before entering upon the operation of the franchise. Defendant claims, and Plaintiff does not dispute, that no negotiations occurred with respect to the franchise agreement, although "the amount and timetable for payment of franchise fees were discussed." (Exh. A, Def. Memo Opposing Summary Judgment).

Mr. Infanti has operated the franchise from June of 1988 to the present. Sometime around August, 1992, a dispute developed over Mr. Infanti's compliance with the franchise agreement's conditions for payment of royalties, and Franklin's brought suit in the State Court of Fulton County, Georgia to compel payment of those amounts. Mr. Infanti retained local Illinois counsel, who was led to believe that the parties were negotiating a resolution that would obviate the need to respond to the suit, but began nonetheless to seek information regarding Franklin's registration with the Illinois Secretary of State.

As a result of local counsel's belief that Plaintiff would take no further action in the case until additional discussions were had, and the delay involved in obtaining information from the Secretary of State, Mr. Infanti did not reply to the Georgia suit until it appeared that a judgment was imminent. (Exhibits B and C, Def. Memo Opposing Summary Judgment).

Georgia counsel was associated, who entered a special appearance in the Georgia court late in November, 1993, arguing that the state of Georgia did not have personal jurisdiction over Mr. Infanti, and seeking to open the default. The Georgia court denied the motion to open default, and entered judgment for plaintiff. Plaintiff now presents the Georgia default judgment to this court, seeking enforcement under 28 U.S.C. 1738 and the full faith and credit clause of the U.S. Constitution. Plaintiff's motion for summary judgment argues that there are no material issues of fact pertaining to the enforceability of the Georgia judgment.

Mr. Infanti has answered the complaint, objecting to enforcement of the Georgia default judgment on the grounds that the Georgia court did not have personal jurisdiction over him and that its judgment is therefore not entitled to full faith and credit. In support of this position he argues, (1) that the Illinois Franchise Disclosure Act prohibits a franchise agreement from including a clause that requires consent to jurisdiction and venue in a foreign state, and (2) that the Georgia long arm statute requires more significant contacts than the single visit eight years ago during which he signed the contract, before it can exercise its jurisdiction over a non-resident. Mr. Infanti also offers as an affirmative defense the allegation that Plaintiff obtained the Georgia judgment by misrepresenting to that court the enforceability of the jurisdiction and venue provisions of the franchise agreement.

Although not relevant to this motion, Infanti also counterclaims that Franklin's made material misrepresentations in connection with the sale of the franchise, caused Infanti damage when it was prohibited from selling franchises in Illinois between 1989 and 1991, and that Infanti is entitled to resultant dam-

ages in excess of those represented by the Georgia judgment. The facts regarding the Georgia judgment being undisputed, the motion appears ripe for summary judgment.

## FACTS NOT IN DISPUTE

The parties agree that plaintiff Franklin's is a Georgia corporation authorized by the Illinois Secretary of State to sell franchises to Illinois residents in 1988 when Mr. Infanti bought his franchise. Mr. Infanti, who has been at all relevant times a resident of Illinois, sought and received by mail information about the franchise opportunities Franklin's offered, and traveled to Georgia twice, in March and April of 1988, first to investigate, and then to enter into a franchise contract. In connection with the signing of the contract, "the amount and timetable for payment of franchise fees were discussed." Mr. Infanti remained in Georgia for several days to receive training at Franklin's corporate headquarters prior to beginning the operation of his franchise.

Apart from these initial visits to Georgia, Mr. Infanti has never traveled to or conducted business there, has not owned any real or personal property, nor maintained an office, telephone number or business address in Georgia. His offices, customers and suppliers are all in Illinois, his employees are all residents of Illinois, all his sales and payroll taxes have been rendered to the State of Illinois, and apart from sending royalty payments to corporate headquarters, Mr. Infanti has not had any other business contacts within the state of Georgia. After execution of the franchise agreement, all face-to-face meetings between Mr. Infanti and Franklin's have occurred outside of Georgia, and eight of these have occurred in Chicago, Illinois.

After being served with the Georgia complaint in September, 1993, Mr. Infanti belatedly entered a limited appearance, contesting the jurisdiction of the State Court of Fulton County, Georgia on November 29, 1993. Mr. Infanti having failed to timely appear before the Georgia Court, a default judgment was entered in favor of Franklin's Systems on March 9, 1994. (Exh. B, Def. Memo Opposing Summary Judgment).

## LEGAL STANDARD

Summary Judgment is appropriate under Federal Rule 56(c) when there remains no genuine issue of material fact upon which a reasonable jury could find in favor of the non-moving party, or where the moving party is entitled to judgment as a matter of law. "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–55, 91 L.Ed.2d 265 (1986). Thus, although the moving party is responsible for demonstrating to the Court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to demonstrate through specific evidence that a material issue remains upon which a rational jury could return a verdict in the non-moving party's favor. *Id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Matsushita* at 586, 106 S.Ct. at 1356.

██ Under 28 U.S.C. 1738, federal courts must give full faith and credit to the final judgments of state courts. That obligation is subject, however, to an important caveat: "before a court is bound by the judgment rendered in another state, it may inquire into

the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter and the relevant parties, full faith and credit need not be given." *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Guaranty Ass'n*, 455 U.S. 691, 705, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558 (1982). This requires the Court to undertake a two-tier analysis, under which it first examines whether the Georgia court had jurisdiction, thus entitling it to full faith and credit, and second determines how much credit the judgment is entitled to receive. The judgment must be given "the same credit, validity, and effect ... which it had in the state where it was pronounced." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 (5th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *Krison v. Nehls*, 767 F.2d 344 (7th Cir.1985); 28 U.S.C. 1738. In order to obtain jurisdiction over Mr. Infanti, the Georgia court must have met both the requirements of Georgia law and the U.S. Constitution.

Franklin's offers two theories upon which the Georgia Court exercised jurisdiction over Mr. Infanti. The first is paragraph 13.07 of the Franchise agreement, under which the parties consent to venue and jurisdiction in the Georgia courts for resolution of disputes arising under the franchise agreement. (Exh. A, Affidavit of Hal Collins). The second is Georgia's long-arm statute, which subjects non-residents to the jurisdiction of Georgia courts if they conduct significant contacts with the state of Georgia. These theories will be examined in turn.

### THE FRANCHISE AGREEMENT

Franklin's first argues that the Georgia courts had jurisdiction over Mr. Infanti by virtue of paragraph 13.07 of the Franchise agreement, which reads:

This agreement shall be deemed to have been made in the State of Georgia and shall be construed according to the laws of the State of Georgia. Franchisee irrevocably consents to the jurisdiction and venue of any Court of general jurisdiction in any state or federal court in Atlanta, Fulton County, Georgia or the county in which Company has its principal place of business with respect to any proceedings arising out of or in any way connected with this agreement.

■ Generally, an express choice of law provision in a contract will be given effect, subject to certain limitations. *Flynn Beverage Inc., v. Joseph E. Seagram & Sons, Inc.*, 815 F.Supp. 1174 (C.D.Ill.1993); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F.Supp. 1311 (N.D.Ill.1993). The primary limitations involve considerations of public policy and the relationship among the chosen forum, the parties, and the transaction. *Flynn Beverage, supra, citing Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 509 N.E.2d 751, 753, 109 Ill.Dec. 90, 92 (1987); *Hengel* at 1314. Defendant argues that this paragraph was not effective in establishing jurisdiction over him by reason of the operation of the Illinois Franchise Disclosure Act, which provides, in pertinent part, that:

[a]ny provision in a franchise agreement which designates jurisdiction or venue in a forum outside of this state is void with respect to any cause of action which otherwise is enforceable in this State....

Ill.Rev.Stat. ch 121½ ¶ 1704.

The Seventh Circuit, in *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128 (7th Cir. 1990), invalidated a choice of law provision in a franchise agreement between a New York franchisor and an Indiana franchisee after determining that enforcement of the provision would be contrary to Indiana public policy, as reflected in the Indiana franchise statute,[1] which reads in pertinent part:

[A] franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protection, whether directly through waiver provisions or indirectly through choice of law. This public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement. *Id.* at 132.

■ This Court finds that Illinois has a strong public policy in overriding the consent

---

1. The Seventh Circuit also noted that "the Illinois franchise statute ... is almost identical to Indiana's statute...." *Wright–Moore*, 908 F.2d at 136.

to jurisdiction provision in paragraph 13.07 of the franchise agreement. The purpose of the Franchise Disclosure Act is to protect Illinois residents, who have suffered losses to franchisors in the past. *See* Ill.Rev.Stat. ch. 121½ ¶ 1702; *Flynn Beverage Inc., supra,* at 1178; *Hengel, supra* at 1316; *P & W Supply Co., Inc., EPW Distribution Center v. E.I. DuPont de Nemours & Co., Inc.,* 747 F.Supp. 1262, 1264 (N.D.Ill.1990) (the statute's purpose is to address the "perceived losses" suffered by Illinois franchisees); *Highway Equipment Co. v. Caterpillar, Inc.,* 908 F.2d 60, 63 (6th Cir.1990) (statute is intended to benefit Illinois residents and has no application outside the state). The Act becomes part of every franchise contract to which it applies, *Cusamano v. Norrell Health Care, Inc.,* 239 Ill.App.3d 648, 652, 607 N.E.2d 246, 249, 180 Ill.Dec. 352, 355 (1993), and consequently became part of this contract. Thus the Act's waiver provision, which provides that, "[a]ny stipulation or provision purporting to bind any person or provision purporting to waive compliance with any provision of this Act is void," and is sufficient to prevent paragraph 13.07 of the instant agreement from serving as a basis for the exercise of personal jurisdiction over Mr. Infanti in the courts of Georgia.

### THE LONG ARM STATUTE

■ Franklin's second theory for asserting the jurisdiction of the Georgia Courts is the Georgia long-arm statute, Official Code of Georgia section 9–10–91, which provides, "A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he (1) Transacts any business within this state; ..."

By construing the term "transacting any business" in the Long–Arm statute liberally so as to uphold jurisdiction, Georgia courts have repeatedly held that, "the execution of a contract by an individual personally present within the territorial limits of the state is sufficient to constitute 'transacting business'

within the meaning of the statute." *Booksing v. Holley,* 210 Ga.App. 869, 437 S.E.2d 857 (1993); *Davis Metals, Inc. v. Allen,* 230 Ga. 623, 198 S.E.2d 285 (1973); *Tampa Motel Mgmt. Co. v. Stratton of Fla. Inc.,* 186 Ga. App. 135, 366 S.E.2d 804 (1988).

In *Booksing v. Holley,* for example, Mr. Corrado, an Ohio resident, traveled to Georgia to close two agreements that had already been signed by other parties in Ohio. These agreements, along with various corporate stock certificates, were presented to and signed by Mr. Holley in Georgia, and a payment was made to Corrado in return. In the lawsuit that followed, where allegations of false representations were made against Mr. Corrado in connection with these transactions, the Georgia Court had no trouble concluding that, the acts of Corrado constituted "transacting business" within the meaning of Georgia's Long-arm statute. *Booksing, supra,* 437 S.E.2d at 860.

■ Under the traditional three prong test, "minimum contacts" exist if, (1) the nonresident has purposefully done some act or consummated some business in the state, thereby purposefully availing himself of Georgia's laws, (2) the cause of action arises from or is connected with such act or transaction, and (3) the exercise of jurisdiction by the Georgia courts is consistent with due process notions of fair play and substantial justice. *Klein v. Allstate Ins. Co.,* 202 Ga. App. 188, 413 S.E.2d 777 (1991); *Georgia Railroad Bank & Trust Co. v. Barton,* 169 Ga.App. 821, 822–23, 315 S.E.2d 17 (1984). "It is critical to this due process analysis that the nonresident defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Booksing, supra,* 437 S.E.2d at 860 (citing *Behar v. Aero Med. Intl. Inc.,* 185 Ga.App. 845, 846, 366 S.E.2d 223 (1988)).

Mr. Infanti entered the territorial limits of the state of Georgia, signed a contract for a long term business arrangement with a Georgia corporation, paid a $25,000 franchise fee, discussed (although he may not have negotiated) the terms of future payments under the agreement, and spent several days in training for the business he was about to undertake as a Franklin's Systems franchisee.

Under these facts, Infanti clearly consummated business in the state by entering into a contract there, and the suit to enforce that contract just as clearly arises from or is connected with it. As will be discussed more fully below, the Court finds that Georgia's exercise of jurisdiction is consistent with due process notions of fair play and substantial justice. Hence, Georgia's exercise of jurisdiction over Mr. Infanti was consistent with the requirement of Georgia's long arm statute that a non-resident "transact business" in the state before becoming subject to the jurisdiction of its courts.

## DUE PROCESS

■ The due process clause requires that, in order to assert jurisdiction over a non-consenting, non-resident defendant, the defendant must have purposefully availed himself of doing business in the forum state. *Burger King v. Rudewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir.1992). Once this purposeful availment has been established, other factors are examined to determine whether assertion of personal jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95).

■ In determining whether a defendant has purposely availed himself of doing business in the forum state, his conduct and contacts with the forum state must have been such that he should reasonably have anticipated being subject to suit there. Strictly random or fortuitous contacts are insufficient. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. In *Burger King*, plaintiff brought suit alleging that defendant had breached his franchise obligations by failing to make the required payments at the plaintiff's place of business in Florida. The defendant, a Michigan citizen and resident, had never been physically present in Florida, but had purchased equipment from plaintiff in Florida, had negotiated the terms of the franchise with plaintiff's Florida office, and had engaged in prolonged negotiations by mail and telephone with plaintiff's Florida office. *Id.*, 421 U.S. at 475–477, 105 S.Ct. at 2183–2184. The Supreme Court relied on the defendant's deliberate efforts to reach out beyond Michigan to procure a long-term franchise and his acceptance of a 20–year relationship that envisioned continuing and wide-reaching contacts in concluding that defendant's contacts with Florida could not be viewed as "fortuitous," "random," or "attenuated." The Court further concluded that the defendant's failure to make payments to Miami caused foreseeable injuries there that should have led him to expect to be sued in Florida, so that the Florida court's exercise of jurisdiction was appropriate. *Id.*

In *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir.1990), the Seventh Circuit considered the exercise of personal jurisdiction by Wisconsin over a Pennsylvania attorney who had arranged for plaintiff to review certain environmental projects for his law firm during a single visit to Wisconsin four years earlier. The defendant attorney had not returned to the state, but had mailed work to plaintiff and discussed it with him on the phone on an ongoing basis. The Court wrote, "[W]hile a single contract between a seller and a nonresident buyer, without more (such as active solicitation), does not automatically establish purposeful availment ... where a defendant has created continuing obligations between himself and the residents of the forum, he manifestly avails himself of the privilege of conducting business in the forum." *Id.* (citations omitted).

■ These cases demonstrate that Infanti was subject to the jurisdiction of the Georgia courts, both because he "reached out" to establish a relationship with an out-of-state corporation and because that relationship was a "continuing obligation" with the residents of Georgia. This Court considers Mr. Infanti's business dealings in Georgia to satisfy the due process clause of the Fourteenth Amendment because he (1) traveled to Georgia to enter into a contract for a long term relationship that spanned several years and

remains in force; (2) paid a large franchise fee for this contract in Georgia; and (3) engaged in a period of training. These activities satisfy the requirement of having purposely transacted business there. Therefore, it is not unfair or unreasonable that Infanti be subject to the jurisdiction of the Georgia courts.

## WHAT CREDIT IS DUE?

■ Having determined that Georgia had personal jurisdiction over Infanti by virtue of its long-arm statute, and that its judgment is therefore entitled to full faith and credit, the Court must determine what effect a default judgment would have in the courts of Georgia, and give it the same effect here. *Krison v. Nehls,* 767 F.2d 344 (7th Cir.1985); 28 U.S.C. 1738.

Georgia courts have reviewed many cases in which default judgments, obtained against Georgia residents in foreign jurisdictions, were challenged on the basis of lack of personal jurisdiction when the judgments were brought to Georgia for enforcement. The rule applied is that if a defendant appeared and challenged the foreign court's jurisdiction without success, there can be no collateral attack on the judgment in Georgia. *See, e.g. Nindos v. Katra, Inc.,* 173 Ga.App. 326, 326 S.E.2d 530 (1985); *Packer Plastics, Inc. v. Johnson,* 205 Ga.App. 797, 423 S.E.2d 690 (1992) ("A collateral attack upon a petition to domesticate a foreign judgment on the basis of lack of personal jurisdiction is precluded if the defendant has appeared in the foreign court and has thus had the opportunity to litigate the issue."); *Bosworth v. Cooney,* 156 Ga.App. 274, 274 S.E.2d 604 (1980); *Gustin v. Roberts Mortgage & Investment Corp.,* 162 Ga.App. 397, 291 S.E.2d 455 (1982). It is apparent therefore, that a default judgment ordered against one who appeared in a foreign jurisdiction to contest personal jurisdiction would be enforced under Georgia law.

Defendant argues that although he appeared in Georgia, he did not have the opportunity to fully and fairly litigate the issue of jurisdiction, and cites *Charles J. Koen & Assoc. v. City of Cairo,* 909 F.2d 992 (7th Cir.1990) and *Krison v. Nehls,* 767 F.2d 344 (7th Cir.1985). These cases are inapposite, for they hold that if a litigant had the *opportunity* to litigate the issue but did not, the demands of due process have been met. "The full and fair opportunity to litigate requirement is satisfied so long as minimum due process standards are satisfied.... A [party's] failure to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy [citation omitted]." *Koen* at 1000.

In *Krison,* the Seventh Circuit upheld a district court denial of plaintiff's argument that he had been denied due process in a Wisconsin administrative proceeding. The Court wrote, "appellant had the opportunity to raise his constitutional claim in the state court, but either did not raise it at all or failed to raise it in conformity with state procedure.... In either event, he was not denied due process by the state court proceedings." *Id.* at 349.

Infanti was served with the complaint in September of 1993, and had 30 days in which to file his answer or motion to dismiss for lack of personal jurisdiction. Ga.Code Ann. 9–11–12. He did not respond until the 29th of November, and suffered a default judgment as a result of this failure. This was the full and fair opportunity to litigate his claim provided by Georgia law, and his failure to timely file a responsive pleading, for whatever reason, does not mean that he was not afforded the opportunity to do so.

## CONCLUSION

The Court finds that there are no disputed issues of material fact with respect to plaintiff's suit to enforce the judgment of the Georgia court, which had jurisdiction over Mr. Infanti by virtue of its Long–Arm Statute. Although by delay or mistake Mr. Infanti failed to avail himself of it, he had a full opportunity to litigate in the Georgia court whatever issues he and his counsel considered relevant. The default judgment is entitled to full faith and credit, it having been obtained in accordance with the due process provisions of the U.S. Constitution and Georgia Law. The Plaintiff's Motion for Summary Judgment is GRANTED.

This ruling does not conclude this case because the Court is aware that the defendant has filed a COUNTERCLAIM. This case is therefore set for a status hearing on April 14, 1995 at 9:00 a.m. for the express purpose of setting an appropriate schedule to deal with the defendant's pending COUNTERCLAIM.