312 Ga. 422
FINAL COPY

S20G1368. COOPER TIRE & RUBBER COMPANY v. McCALL.

LaGrua, Justice.

We granted certiorari in this products liability action against an out-of-state corporation to reconsider one of our holdings in *Allstate Insurance Co. v. Klein*, 262 Ga. 599 (422 SE2d 863) (1992). In *Klein*, we held that Georgia courts may exercise general personal jurisdiction over any out-of-state corporation that is "authorized to do or transact business in this state at the time a claim or cause of action arises." Id. at 601 (citation and punctuation omitted). As discussed below, although *Klein*'s general-jurisdiction holding is in tension with a recent line of United States Supreme Court cases addressing when state courts may exercise general personal jurisdiction over out-of-state corporations in a manner that accords with the due process requirements of the United States Constitution, *Klein* does not violate federal due process under

*Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U. S. 93 (37 SCt 344, 61 LE 610) (1917), a decision that the Supreme Court has not overruled. Thus, we are not required to overrule *Klein* as a matter of binding federal constitutional law. We also decline to overrule *Klein* as a matter of statutory interpretation. Therefore, we affirm the Court of Appeals' decision, which followed *Klein*.

The Court of Appeals summarized the undisputed underlying facts and procedural history of this case as follows:

> [Florida resident] Tyrance McCall sued Cooper Tire & Rubber Company ("Cooper Tire") and two other defendants in the State Court of Gwinnett County for injuries he allegedly sustained in a motor vehicle collision.
> . . .
>
> McCall's complaint alleges that on April 24, 2016, he was a passenger in a vehicle that was equipped with a rear tire designed, manufactured, and sold by Cooper Tire. As the vehicle was traveling on a Florida roadway, the tire tread "suddenly failed and separated from the remainder of the tire." The driver lost control of the vehicle, which left the roadway and rolled over until it came to rest in a nearby wooded area. McCall sustained severe injuries in the crash.
> Following the collision, McCall sued Cooper Tire for

2

negligence, strict product liability, and punitive damages. He also asserted claims against the driver, a Georgia resident, and the Georgia car dealership that sold the vehicle to the driver. Cooper Tire answered the complaint, raising numerous defenses, including lack of personal jurisdiction. It also filed a motion to dismiss, arguing that as a nonresident corporate defendant with only minimal contacts in Georgia, it is not subject to personal jurisdiction in this state. An accompanying affidavit from Cooper Tire's corporate counsel established that Cooper Tire is incorporated in Delaware and maintains its principal place of business in Ohio.

McCall responded that Cooper Tire is a resident of Georgia — and thus subject to personal jurisdiction here — because it is authorized to transact business in the state. In its reply, Cooper Tire did not dispute that it has been authorized to transact business in Georgia at all times relevant to this suit. It argued, however, that such circumstances do not make it a Georgia resident for jurisdictional purposes. The trial court agreed and granted Cooper Tire's motion to dismiss.

*McCall v. Cooper Tire & Rubber Co.*, 355 Ga. App. 273, 273-274 (843 SE2d 925) (2020). On appeal, the Court of Appeals reversed the trial court, concluding that under *Klein*, "Cooper Tire is a resident corporation subject to personal jurisdiction in this state, [and] the trial court erred in granting the motion to dismiss." Id. at 275.

We granted Cooper Tire's petition for a writ of certiorari. For the reasons that follow, we conclude that, although *Klein*'s general-

3

jurisdiction holding is in tension with the trajectory of recent United States Supreme Court decisions addressing a state's authority to exercise general personal jurisdiction over corporations, *Klein* cannot be overruled on federal constitutional grounds.[1]  And, considerations of stare decisis counsel against overruling *Klein*'s holding as a matter of statutory construction.  Accordingly, as held by the Court of Appeals, Cooper Tire is currently subject to the general jurisdiction of our courts under *Klein*.

1.  The seminal case of *Pennoyer v. Neff*, 95 U. S. 714 (24 LE 565) (1878), established the parameters governing a state court's authority to assert personal jurisdiction over an out-of-state defendant in accordance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Under that framework, due process of law required either the "voluntary appearance" of the out-of-state defendant or personal service of process upon the out-of-state defendant to bring the defendant

---

[1] We posed a threshold question to the parties asking whether the argument that *Klein*'s holding should be reconsidered was properly preserved in the courts below.  We conclude that the issue was adequately preserved.

within the state's jurisdiction and allow the defendant to be "personally bound by any judgment rendered." Id. at 733-734 (citation and punctuation omitted).

As recently noted by Justice Gorsuch, in the years after *Pennoyer*, interstate commerce and the development of corporations continued to rise in this country, and thus, many states faced an increase in legal conflicts involving out-of-state corporate defendants in their courts. See *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, ___ U. S. ___ (141 SCt 1017, 1037, 209 LE2d 225) (2021) (Gorsuch, J., concurring). "States sought to obviate any potential question about corporate jurisdiction by requiring an out-of-state corporation to incorporate under their laws too, or at least designate an agent for service of process." Id. "[T]he idea was to secure the out-of-state company's presence or consent to suit" in that state. Id.

During this time period, the Supreme Court issued its decision in *Pennsylvania Fire* and formalized the concept of general corporate jurisdiction by "consent." See *Pennsylvania Fire*, 243 U.S. at 94. In

5

*Pennsylvania Fire*, an out-of-state insurance company obtained a license to do business in Missouri and, in compliance with Missouri's corporate statute, Rev. Stats. Mo., 1909, § 7042, filed a power of attorney "consenting that service of process upon the superintendent [of the insurance department] should be deemed personal service upon the company so long as it should have any liabilities outstanding in the [s]tate." Id. The lawsuit at issue was commenced through service of process upon the superintendent, and the insurance company argued that "such service was insufficient" and that, "if the statute were construed to govern the present case[,] it encountered the Fourteenth Amendment by denying to the defendant due process of law." Id. at 94-95. After the Supreme Court of Missouri held that the statute was applicable and consistent with the United States Constitution, the insurance company appealed to the United States Supreme Court. See id. at 95.

In affirming the Missouri Supreme Court, the United States Supreme Court held:

The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. If by a corporate vote it had accepted service in this specific case there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert.

*Pennsylvania Fire*, 243 U. S. at 95. Thus, under the holding of *Pennsylvania Fire*, where a state statute notifies an out-of-state corporation that by registering and appointing an agent for service of process in the state, the corporation has consented to general personal jurisdiction there, the corporation has not been deprived of the Fourteenth Amendment's guarantee of due process of law when it is sued in that state. See id. at 95-96.

In *International Shoe Co. v. Washington*, 326 U. S. 310 (66 SCt 154, 90 LE 95) (1945), the Court further refined the concept of personal jurisdiction as it applied to out-of-state corporations and,

7

in doing so, examined the historical context of its prior holdings, which were largely influenced by an out-of-state defendant's presence within the "territorial jurisdiction" of a state. Id. at 316. The Court noted that "the corporate personality is a fiction," and thus, unlike an individual, a corporation's "presence without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it." Id. To further elucidate this point, the Court explained:

> "Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process.

Id. at 317 (citations omitted). The Court thus held that a state court

could appropriately assert personal jurisdiction over an out-of-state corporation, consistent with the Due Process Clause of the Fourteenth Amendment, when the defendant corporation has such "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," or in instances where the corporation's continuous operations in the state were "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Id. at 316, 318 (citation and punctuation omitted).

Notably, in reaching this holding in *International Shoe*, the Court did not overrule or even reference *Pennsylvania Fire* or reject the theory that an out-of-state corporation could consent to personal jurisdiction in a state's courts by registering to do business there. In fact, the Court noted that the jurisdictional determinations rendered in *International Shoe* applied to cases where "no consent to be sued or authorization to an agent to accept service of process ha[d] been given" — a reasonable limitation given that the Court

9

was considering only those circumstances where an out-of-state corporate defendant was subject to general jurisdiction in a state against its will, as opposed to having consented to general jurisdiction in the state through the execution of a contract, voluntary registration, or otherwise. Id. at 317.

In the decades after *International Shoe*, the Court continued to hone the concept of a state court's exercise of personal jurisdiction over an out-of-state corporation that had not "consent[ed] to be sued." 326 U. S. at 317. To that end, the Court recognized two emergent subsets of jurisdictional authority – *general* personal jurisdiction and *specific* personal jurisdiction. See, e.g., *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, ___ U. S. ___ (137 SCt 1773, 1781-1783, 198 LE2d 395) (2017); *BNSF Railway Co. v. Tyrrell*, ___ U. S. ___ (137 SCt 1549, 1558-1559, 198 LE2d 36) (2017); *Daimler AG v. Bauman*, 571 U. S. 117, 133-139 (134 SCt 746, 187 LE2d 624) (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U. S. 915, 926-929 (131 SCt 2846, 180 LE2d 796) (2011).

In clarifying the concept of general jurisdiction, the Court explained:

> General jurisdiction, as its name implies, extends to any and all claims brought against a defendant. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction. In what we have called the "paradigm" case, an individual is subject to general jurisdiction in her place of domicile. And the equivalent forums for a corporation are its place of incorporation and principal place of business.

*Ford,* 141 SCt at 1024 (II) (A) (citations and punctuation omitted). See also *Goodyear*, 564 U. S. at 919 ("A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." (Citation and punctuation omitted.)).

Over the last ten years, *Goodyear* and its progeny have adhered to the jurisdictional approach of *International Shoe* and held that, at least with respect to an out-of-state corporation that has not

consented to jurisdiction, the corporation will ordinarily be subject to general jurisdiction in only one or two states — the state where it is incorporated and, if different, the state where its principal place of business is located. See *Ford*, 141 SCt at 1024 (II) (A). The Court reasoned that these locations are the appropriate forums for the exercise of general jurisdiction over corporations because these "affiliations have the virtue of being unique — that is, each ordinarily indicates only one place — as well as easily ascertainable," and these locations "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Daimler*, 571 U. S. at 137 (IV) (B). Additionally, the Court explained that any broader exercise of general jurisdiction would "scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id. at 139 (IV) (B) (citations and punctuation omitted).

In contrast to general jurisdiction,

[s]pecific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home — by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. Yet even then — because the defendant is not "at home" — the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum.

*Ford*, 141 SCt at 1024-1025 (II) (A) (citations and punctuation omitted). See also *Goodyear*, 564 U. S. at 919 ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (Citations and punctuation omitted.)). For purposes of establishing specific jurisdiction, "[m]any States have enacted long-arm statutes authorizing courts to exercise specific jurisdiction over [out-of-state] manufacturers when the events in suit, or some of

13

them, occurred within the forum [S]tate." *Goodyear*, 564 U. S. at 926 (II) (B). The General Assembly has enacted such a long arm statute in Georgia, OCGA § 9-10-90 et seq. (the "Long Arm Statute").

OCGA § 9-10-91 says in pertinent part:

> A court of this state may exercise [specific] personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

More succinctly stated, the Long Arm Statute defines "the scope of personal jurisdiction that Georgia courts may exercise over nonresidents pursuant to OCGA § 9-10-91" and "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to [specific] personal

jurisdiction." *Innovative Clinical & Consulting Svcs., LLC v. First Nat. Bank of Ames*, 279 Ga. 672, 673 (620 SE2d 352) (2005) (citations and punctuation omitted). See also *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987) ("The rule that controls is our [Long Arm Statute], which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to [specific] personal jurisdiction[, and] [w]here . . . no such acts were committed, there is no jurisdiction."). OCGA § 9-10-90 defines "nonresident" for purposes of the Long Arm Statute. OCGA § 9-10-90 provides, in relevant part:

> [T]he term "nonresident" includes . . . a corporation which is not organized or existing under the laws of this state and is not authorized to do or transact business in this state at the time a claim or cause of action under Code Section 9-10-91 arises. . . .

The definition of "nonresident" found in OCGA § 9-10-90 formed the basis for our first holding in *Klein*. *Klein* arose from a motor vehicle accident on a Georgia interstate involving two vehicles driven by nonresidents of Georgia. See *Klein*, 262 Ga. at 599. The plaintiff, who was injured in the accident, was a passenger in one of

15

the vehicles and filed a lawsuit in Glynn County against Allstate Insurance Company, the insurer of the vehicle in which he was traveling. See id. at 599-600. In support of the plaintiff's claim that Georgia had personal jurisdiction over Allstate, the plaintiff asserted that he was not relying on the Long Arm Statute for personal jurisdiction, but rather that Allstate was subject to personal jurisdiction because it was "a corporation authorized to transact business in Georgia, and which has an office and a registered agent in Glynn County." Id. at 600. Allstate moved to dismiss the plaintiff's complaint for lack of personal jurisdiction, claiming that "any connection between the cause of action and Allstate's activities within the state were too tenuous to satisfy" paragraph (1) of OCGA § 9-10-91. Id. The trial court granted Allstate's motion to dismiss. See id. On appeal, the Court of Appeals reversed, holding that personal jurisdiction over Allstate was proper under the Long Arm Statute. See *Klein v. Allstate Ins. Co.*, 202 Ga. App. 188, 191 (2) (413 SE2d 777) (1991).

This Court granted certiorari, and although we affirmed, we

did so under a different rationale, explaining that

> [t]he Long Arm Statute applies solely to persons who were *nonresidents* of Georgia at the time the act or omission complained of occurred. Therefore, the [statute's] requirement that a cause of action arise out of activities within the state applies only to the exercise of personal jurisdiction over *nonresidents*.

*Klein*, 262 Ga. at 600 (citation and punctuation omitted; emphasis in original). We then noted that the definition of "nonresident" in the Long Arm Statute "includes a corporation which is not organized or existing under the laws of this state *and is not* authorized to do or transact business in this state at the time a claim or cause of action arises." Id. at 601 (citation and punctuation omitted; emphasis in original). Given this definition, we held:

> It is apparent from the language of [the "nonresident" definition] that a corporation which *is* authorized to do or transact business in this state at the time a claim arises is a "resident" for purposes of personal jurisdiction over that corporation in an action filed in the courts of this state.

Id. at 601 (punctuation omitted; emphasis in original). Citing the Georgia Business Corporation Code, OCGA § 14-2-1505 (b),[2] we

---

[2] OCGA § 14-2-1505 (b) provides:

17

further held that "[a]s a resident, such a foreign corporation may sue or be sued to the same extent as a domestic corporation." *Klein*, 262 Ga. at 601.

Based on our reading of the Georgia statutes, we concluded that

> a plaintiff wishing to sue in Georgia a corporation authorized to do business in Georgia is not restricted by the personal jurisdiction parameters of [the Long Arm Statute], including the requirement that a cause of action arise out of a defendant's activities within the state.

*Klein*, 262 Ga. at 601. In other words, based primarily on the Long Arm Statute's scheme for specific jurisdiction over corporations, we held that any corporation that is authorized to do business in Georgia is subject to the *general* jurisdiction of Georgia's courts. And, in a concluding footnote, we suggested that this holding did not violate federal due process. See id. at 601 n.3.[3]

---

A foreign corporation with a valid certificate of authority has the same but no greater rights under this chapter and has the same but no greater privileges under this chapter as, and except as otherwise provided by this chapter is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

[3] Specifically, we said:

2.  As noted above, since *Klein*, the United States Supreme Court has continued to develop the principles governing a state court's exercise of *general* personal jurisdiction over out-of-state corporations in *Goodyear* and its progeny.  And, in doing so, the Court has "declined to stretch general jurisdiction beyond limits traditionally recognized" by *International Shoe. Daimler*, 571 U. S. at 132 (III).  As the Court "has increasingly trained on the relationship among the defendant, the forum, and the litigation, i.e.,

---

The constitutionality of the definition of nonresident contained in the Long Arm Statute, as it pertains to foreign corporations, has not been challenged in this case, addressed by the parties, or ruled on by the lower courts.  However, it appears that the definition does not run afoul of the "minimum contacts" requirement of procedural due process.  The U. S. Supreme Court has addressed the issue of just what constitutes "fair play and substantial justice" when it comes to personal jurisdiction over foreign corporations. That Court held that "if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. . . . [W]e find no requirement of federal due process that either *prohibits* a state from opening its courts to [a cause of action not arising out of the corporation's activities in the state] or *compels* [a state] to do so.  This conforms to the realistic reasoning in *International Shoe v. Washington* [326 U. S. 310]."
Id. at 601 n.3 (citation omitted).

19

specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." Id. at 132-133 (III). In sum, in the *Goodyear* line of cases, the Court has held that general jurisdiction is properly exercised where a corporation's operations are so substantial, continuous, and systematic as to render the corporation essentially "at home" in a state, a determination that will necessarily be made on a case-by-case basis after considering the facts and circumstances unique to each case. See *Goodyear*, 564 U. S. at 919, 929 (II) (B); *Daimler*, 571 U. S. at 130 (III).

However, while Cooper Tire relies on *Goodyear* and its progeny to challenge the viability of *Pennsylvania Fire*'s "consent by registration" theory of general personal jurisdiction and to argue that *Pennsylvania Fire*'s holding "conflicts with modern due process jurisprudence," *Pennsylvania Fire* has not been overruled, nor was it even addressed by the majority opinions in these cases. In fact, during this same time period, the Court has continued to recognize consent as a proper means of exercising personal jurisdiction over

an out-of-state corporation. See *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U. S. 873, 880 (II) (131 SCt 2780, 180 LE2d 765) (2011) (plurality op.) ("A person may submit to a [s]tate's authority in a number of ways[;] [t]here is, of course, explicit consent," and "[p]resence within a [s]tate at the time suit commences through service of process is another example." (Citations and punctuation omitted.)).

In addition, a number of federal and state courts have concluded that despite *Goodyear* and its progeny, the "designation of an in-state agent for service of process in accordance with a state registration statute may constitute consent to personal jurisdiction, if supported by the breadth of the statute's text or interpretation." *Otsuka Pharmaceutical Co. v. Mylan Inc.*, 106 FSupp.3d 456, 469 (D. N.J. 2015). See also, e.g., *AK Steel Corp. v. PAC Operating Ltd. Partnership*, Case No. 2:15-CV-09260-CM-GEB, 2017 WL 3314294 at*3-*4 (III) (A) (D. Kan. 2017); *Acorda Therapeutics, Inc. v. Mylan Pharmaceuticals, Inc.*, 78 FSupp.3d 572, 588-589 (III) (D. Del.

21

2015);[4] *Rodriguez v. Ford Motor Co.*, 458 P3d 569, 575-578 (N.M. App. 2018); *Weinstein v. Kmart Corp.*, 99 AD3d 997, 997 (N.Y. 2012).

While we acknowledge that some other courts have held to the contrary, we note that the states in those cases did not have a corporate domestication or registration statute, or any authoritative case law interpreting such a statute, that provided notice to out-of-

[4] For example, in *Acorda Therapeutics*, the court explained:
*Daimler* does not eliminate consent as a basis for a state to establish general jurisdiction over a corporation which has appointed an agent for service of process in that state, as is required as part of registering to do business in that state. Mylan Pharma concedes, as it must, that *Daimler* does not expressly address consent. Indeed, in the entire opinion in *Daimler* there is but a single, passing reference to the concept of consent: "The Court's 1952 decision in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 SCt 413, 96 LE 485 (1952), remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." In this way, *Daimler* distinguishes between consensual and non-consensual bases for jurisdiction. It preserves what has long been the case: that these are two distinct manners of obtaining jurisdiction over a corporation. Consistent with *Daimler* it remains the law that general jurisdiction may be established by showing that a corporation is "at home" in the sense described in detail in *Daimler* or separately general jurisdiction may be established by a corporation's consent to such jurisdiction. *Daimler* is directed to the former situation and has nothing to say about the latter scenario.
Id. (citations and punctuation omitted).

22

state corporations that they consented to general jurisdiction in the state by domesticating or registering to do business there. See, e.g., *Fidrych v. Marriott Intl., Inc.*, 952 F3d 124, 137-138 (4th Cir. 2020) (holding that under the rules set out in *Pennsylvania Fire*, "obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state only if that condition is explicit in the statute or the state courts have interpreted the statute as imposing that condition," but "South Carolina law does not make consent to general jurisdiction a consequence of obtaining a certificate of authority to transact business" (emphasis omitted)); *Waite v. AII Acquisition Corp.*, 901 F3d 1307, 1320-1321 (11th Cir. 2018) (holding that Florida law did not either expressly or by state-court construction establish that registration to do business and appointment of an agent for service of process in Florida amounted to consent to general personal jurisdiction in Florida courts); *Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, LLC*, 717 Fed. Appx. 394, 397-398 (5th Cir. 2017) (holding that "[t]his case lacks

what *Pennsylvania Fire* had: a clear statement from the state court construing the statute to require consent," because in Louisiana, "[n]one of the statutes covering registration informs a company that by registering it consents to suit"); *DeLeon v. BNSF Railway Co.*, 426 P3d 1, 7-9 (392 Mont. 446) (2018) (holding that a foreign corporation's act of registering to do business in Montana and subsequently conducting in-state business activities did not amount to consent to general personal jurisdiction in Montana in accordance with due process because the registration statutes specifically provided that appointment of registered agent did not by itself create a basis for personal jurisdiction and nothing else put the foreign corporation on notice that, by appointing a registered agent to receive service of process, it was consenting to personal jurisdiction); *Genuine Parts Co. v. Cepec*, 137 A3d 123, 148 (Del. 2016) (concluding that while "*Daimler* does not suggest that th[e] traditional avenue of consent to personal jurisdiction is no longer viable," the United States Supreme Court has clarified "the due-process limits on general jurisdiction in *Goodyear* and *Daimler*," and

thus, "we read our state's registration statutes as providing a means for service of process and not as conferring general jurisdiction").

Georgia's Business Corporation Code does not expressly notify out-of-state corporations that obtaining authorization to transact business in this State and maintaining a registered office or registered agent in this State subjects them to general jurisdiction in our courts, see OCGA § 14-2-1501 (a), OCGA § 14-2-1507. However, our general-jurisdiction holding in *Klein* does notify out-of-state corporations that their corporate registration will be treated as consent to general personal jurisdiction in Georgia, distinguishing our State from those in the cases just cited. Unless and until the United States Supreme Court overrules *Pennsylvania Fire*, that federal due process precedent remains binding on this Court and lower federal courts. See *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U. S. 477, 484 (III) (109 SCt 1917, 104 LE2d 526) (1989) (explaining that even when the holding of a Supreme Court decision appears to be contradicted by the reasoning of another line of decisions, the holding rather than the

25

subsequent reasoning is binding on lower courts).  See also *Maxim Cabaret, Inc. v. City of Sandy Springs*, 304 Ga. 187, 191 (III) n.4 (816 SE2d 31) (2018) ("[W]here precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, lower courts should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." (Citation and punctuation omitted).).  And, viewing *Klein* against this backdrop, *Klein*'s holding that corporate registration in Georgia is consent to general jurisdiction in Georgia does not violate federal due process under *Pennsylvania Fire*.

3.  Having concluded that *Klein*'s general-jurisdiction holding does not violate federal due process, we must now decide whether it should still be followed as a matter of statutory stare decisis.

> Under the doctrine of stare decisis, courts generally stand by their prior decisions, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.  Stare decisis, however, is not an inexorable command.  Courts, like individuals, but with

26

more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. In reconsidering our prior decisions, we must balance the importance of having the question decided against the importance of having it decided right. To that end, we have developed a test that considers the age of precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning. The soundness of a precedent's reasoning is the most important factor.

*Olevik v. State*, 302 Ga. 228, 244-245 (2) (c) (iv) (806 SE2d 505) (2017) (citations, punctuation and emphasis omitted). Considerations of stare decisis have greater weight with regard to precedents interpreting statutes than precedents regarding constitutional issues. See *Allen v. State*, 310 Ga. 411, 420-421 (6) (851 SE2d 541) (2020). Weighing the stare decisis factors here, we see no compelling reason to overrule *Klein*'s statutory construction holding.

(a) *Soundness of Reasoning.*

Addressing first the soundness of the reasoning factor, we note that *Klein*'s first statutory construction holding — i.e., that registered corporations are not "nonresidents" and thus are not

27

subject to specific personal jurisdiction in Georgia under the Long Arm Statute — was clearly correct under the plain language of the statute, and it has not been challenged by the parties in this case. Although the reasoning behind the *Klein* Court's inverse implication — i.e., that because registered corporations are not subject to specific jurisdiction under the Long Arm Statute, they must be subject to general jurisdiction in Georgia — may not have been well-explained, it was not clearly wrong under the governing case law at the time. And, it is not unconstitutional given the continuing validity of *Pennsylvania Fire*.

Additionally, *Klein*'s holding about general jurisdiction in this context was sensible because, had the Court reached a different conclusion, a jurisdictional gap would have emerged whereby a *registered* out-of-state corporation would apparently not have been subject to *any* jurisdiction in Georgia — specific or general. Cooper Tire does not explain what alternative holding the Court should have reached in *Klein*, other than to suggest that registered corporations should not be subject to the jurisdiction of Georgia's

28

courts at all. Accordingly, we conclude that this factor does not weigh in favor of overruling *Klein*.

(b) *Age of the Precedent.*

*Klein* is almost 30 years old; though we have overruled even older cases when other considerations of stare decisis counseled in favor of doing so, see, e.g., *Southall v. State*, 300 Ga. 462, 468 (1) (796 SE2d 261) (2017), *Klein*'s age does not weigh in favor of its overruling. See *Frett v. State Farm Employee Workers' Compensation*, 309 Ga. 44, 65 (844 SE2d 749) (2020) (Peterson, J., dissenting) (noting that a precedent's age is an important consideration "especially . . . when statutory precedents are considered").

We also note that while this Court has cited *Klein* only once in the past 30 years for a different proposition, see *Innovative Clinical*, 279 Ga. at 674 n.2, the Court of Appeals has relied upon or cited *Klein*'s general-jurisdiction holding in nine cases, and federal district courts applying Georgia law have done so in twelve cases. See, e.g., *Ward v. Marriott Intl., Inc.*, 352 Ga. App. 488, 494 (835

SE2d 322) (2019); *Cherokee Warehouses, Inc. v. Babb Lumber Co.*, 244 Ga. App. 197, 199 n.6 (535 SE2d 254) (2000); *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga. App. 1, 2-3 (460 SE2d 94) (1995); *Rumbold v. Trader Joe's East, Inc.*, Case No. 1:20-cv-03437-WMR-LTW, 2021 WL 3043420 at *3 (II) (A) (N.D. Ga. 2021); *Drake v. JWN Inc.*, Case No. CV218-026, 2018 WL 9415068 at *2 (I) (S.D. Ga. 2018); *Hines v. Mann Bracken, LLP*, Case No. 1:09-CV-03052-RWS-LTW, 2010 WL 11647047 at *3 (I) (A) (N.D. Ga. 2010).

(c) *Reliance Interests.*

We have not identified, nor has McCall cited, "any . . . reliance interests that would be significantly impaired were we to overrule" *Klein. Frett*, 309 Ga. at 61 (majority opinion).

(d) *Workability.*

The workability factor of the stare decisis analysis weighs most strongly against overruling *Klein*'s general-jurisdiction holding. If we were to overrule that holding, we would generate the jurisdictional gap discussed above whereby a potentially large swath of out-of-state corporations like Cooper Tire could fall into a class

30

exempt from all personal jurisdiction — specific and general — in this State simply because they are authorized and registered to do business here.

As *Klein* correctly held based on the plain language of the Long Arm Statute, the definition of "nonresident" in OCGA § 9-10-90 limits the statute's application to out-of-state corporations that are *not* authorized to do or transact business in this state at the time a claim under OCGA § 9-10-91 arises. Given that definition, out-of-state corporations that *are* authorized and registered to do business in Georgia are not subject to specific jurisdiction under the Long Arm Statute. But, if we were to overrule *Klein*'s general-jurisdiction holding, these corporations would not be subject to *general* jurisdiction in this State, either. This outcome would allow out-of-state corporations to insulate themselves from personal jurisdiction in Georgia simply by obtaining the requisite certificate of authority and registering to do business here, thereby effectively immunizing themselves from suit for *any cause whatsoever*. Notably, this is the outcome suggested by Cooper Tire —i.e., that we should overrule

31

*Klein* and hold that if an out-of-state corporation registers to do business in Georgia, that corporation cannot be sued in Georgia.

Based on our analysis of the stare decisis factors, we decline to overrule *Klein,* avoiding this perverse consequence. However, we note that the tension between *Klein* and recent United States Supreme Court precedent remains, and *Klein*'s general-jurisdiction holding may be undermined if the Supreme Court ever reconsiders and overrules *Pennsylvania Fire.* For these reasons, the General Assembly could preemptively obviate that risk by modifying the governing statutes to enable Georgia courts to exercise specific personal jurisdiction over out-of-state corporations whether they are authorized to do business in this State or not, provide for general jurisdiction where appropriate, or otherwise tailor this State's jurisdictional scheme within constitutional limits.

4. In conclusion, because the Long Arm Statute does not apply to an out-of-state corporation that is authorized to do business in Georgia, Cooper Tire is not subject to specific personal jurisdiction in Georgia under OCGA §§ 9-10-90 and 9-10-91. However, because

32

Cooper Tire is registered and authorized to do business in Georgia, Cooper Tire is currently subject to the general jurisdiction of our courts under *Klein*'s general-jurisdiction holding, which we have decided to leave in place.  On this basis, we affirm the decision of the Court of Appeals.

*Judgment affirmed.  All the Justices concur.*

.

BETHEL, Justice, concurring.

I concur fully in the opinion of the Court. I write separately for the sole purpose of calling the General Assembly's attention to the peculiar and precarious position of the current law of Georgia.

Currently, foreign corporations that register to conduct business in Georgia expose themselves to being haled into Georgia courts for all matters regardless of the underlying suit's connection to Georgia. By contrast, those that decline Georgia registration have significantly less exposure. Because it creates a disincentive for foreign corporations to register in Georgia, this structure strikes me as contrary to the often-expressed desire to make Georgia a "business-friendly" state. Moreover, in light of the trend in the recent opinions of the United States Supreme Court regarding the exercise of personal jurisdiction by state courts, there appears to be a meaningful chance that the current law of Georgia will, at some point, be found to be inconsistent with the requirements of federal due process. In that event, Georgians injured in Georgia by the acts

or omissions of corporations domiciled outside of Georgia and registered to conduct business here might find legal recourse available only in the courts of other states. This is so because in the event the holding of *Klein* is overruled on due process grounds, the "gap" identified in the Court's opinion in this case will immediately spring to life, and Georgia's law governing the exercise of personal jurisdiction will not include a basis for jurisdiction over those businesses domiciled outside of Georgia that have registered to conduct business in Georgia. I'll not endeavor to list the potential problems that state of affairs might present. In light of these concerns, even if it elects to maintain the status quo, it is my hope that the General Assembly will at least consider this matter thoroughly and carefully.

Decided September 21, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 273.

*Balch & Bingham, Christopher S. Anulewicz; Clyde & CO US, Eric D. Ruben, Douglas E. Horelick*, for appellant.

*Conley Griggs Partin, Cale Conley, Scott A. Farrow, William K. Owens, Jr.*, for appellee.

*Weathington LLC, David C. Hanson; Drew Eckl & Farnham, Jeffrey S. Ward, Elissa B. Haynes; Ellis Painter Ratterree & Adams, Philip M. Thompson; King & Spalding, Brandon R. Keel; Bryan Cave Leighton Paisner, William V. Custer IV, Christian J. Bromley; Sutherland Asbill & Brennan, Rocco E. Testani*, amici curiae (for appellants).

*Penn Law, Darren W. Penn; Butler Wooten & Peak, James E. Butler, Jr., Joel O. Wooten, Jr., Joseph M. Colwell,  Rory A. Weeks, Tedra L. Cannella, Ramsey B. Prather; Warshauer Law Group, Lyle G. Warshauer; Schreeder Wheeler & Flint, Robert H. Snyder, Jr.*, amici curiae (for appellee).