IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-202

Filed 3 December 2025

Cabarrus County, No. 24CVS002327-120

PDII, LLC, Plaintiff,

v.

SKY AIRCRAFT MAINTENANCE, LLC,
STEVEN TRENT, TEXTRON INC., AND
TEXTRON AVIATION INC., Defendants.

Appeal by defendant from order entered 23 October 2024 by Judge Anna Mills Wagoner in Cabarrus County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *James, McElroy & Diehl, P.A., by Preston O. Odom, III and John R. Buric, for plaintiff-appellee.*
>
> *Cranfill Sumner LLP, by Steven A. Bader, Aliyah S. Adams, Mica N. Worthy, and Maria Aguilera, for defendant-appellant.*

FLOOD, Judge.

Defendant Textron Inc. appeals from the trial court's denial of its motion to dismiss for lack of personal jurisdiction. On appeal, Defendant argues the trial court erred in denying its motion to dismiss, contending Defendant does not have sufficient minimum contacts with North Carolina. Upon careful review, we conclude the trial court properly denied Defendant's motion to dismiss because Defendant consented to general personal jurisdiction by registering to do business in North Carolina.

## I. Factual and Procedural Background

Plaintiff PDII, LLC is a North Carolina limited liability company headquartered in Cabarrus County, North Carolina. In February 2024, Plaintiff suffered a total loss of its Beechjet 400 airplane (the "Airplane") when one or more elevator cables in the Airplane's tail snapped during takeoff, resulting in a crash that killed two passengers. Plaintiff subsequently filed suit against four defendants: (1) Sky Aircraft Maintenance, LLC; (2) Sky's Director of Maintenance, Steven Trent; (3) Defendant; and (4) Textron Aviation, Inc. ("Textron Aviation").

Relevant to this appeal, Plaintiff filed a verified complaint, asserting a products-liability claim against Defendant and Textron Aviation, and alleging the defectiveness of one or more of the elevator cables in the Airplane. Particularly, Plaintiff alleged that Defendant was subject to personal jurisdiction in North Carolina, stating that "[u]pon information and belief, Defendant [] conducts business in North Carolina by directing goods to individuals and businesses residing in the state."

Defendant moved to dismiss for lack of personal jurisdiction. With its motion to dismiss, Defendant submitted an affidavit from Jayne Donegan, the Senior Executive Counsel and Assistant Secretary for Defendant. Donegan explained that Defendant: "is a Delaware corporation with its principal place of business in Rhode Island"; "is registered to do business in North Carolina" but "does not maintain a physical office or facility in North Carolina"; "does not have any employees working

in North Carolina"; does not have any "bank accounts or business operations in the State of North Carolina"; "did not manufacture, sell, or contract with any North Carolina resident or entity related to the subject aircraft or the subject aircraft parts in this action"; "does not advertise or market aircraft products or services in North Carolina or to residents in North Carolina"; "does not target North Carolina residents through its online presence"; and thus, "has no continuing or systemic contacts with the State of North Carolina."

Plaintiff filed an unverified response to Defendant's motion to dismiss, arguing:

> In addition to Textron Aviation Inc., another named defendant in this case, one of [Defendant]'s "segments" goes by the name of Jacobsen, . . . which manufactures and offers professional turf maintenance equipment and turf-care vehicles for various golf courses, sporting venues, airports, and municipalities. Jacobsen is headquartered in and maintains a manufacturing plant in North Carolina at 11108 Quality Drive, Charlotte, NC 28273 and 11524 Wilmar Boulevard, Charlotte, NC 28273[.]

Plaintiff included website links and screenshots of a website page, which stated "Jacobsen®, A Textron Company is committed to providing high-quality turf equipment to customers around the world." Plaintiff further argued that "[o]n [Defendant]'s 'Our Locations' webpage, [Defendant] displays a map which identifies its 'Greensboro Service Center' in Greensboro, North Carolina." Plaintiff also contended that Defendant "sells its products to North Carolina distributors," "services its products in North Carolina," and "advertises and markets its products

to residents of North Carolina, among other things."

Defendant then filed a memorandum of law in support of its motion to dismiss, arguing that Plaintiff had confused Textron Aviation's Greensboro center with Defendant, and attached a picture from the website to show that the Greensboro center is called "Textron Aviation Greensboro Service Center." Defendant then argued "Jacobsen is a totally separate entity that does not confer jurisdiction on to any of the other companies or brands[,]" and "[t]here is no legal basis for this argument when there is clear separation in ownership and corporate officers."

The trial court subsequently heard arguments by the parties on Defendant's motion to dismiss,[1] and on 23 October 2024, the trial court denied Defendant's motion to dismiss, without making any findings of fact within the order. Defendant timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction to hear Defendant's appeal pursuant to N.C.G.S. § 1-277(b), which provides that "[a]ny interested party has the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]" N.C.G.S. § 1-277(b) (2023).

## III. **Standard of Review**

"When the parties have submitted affidavits and other documentary evidence,

---

[1] No transcript of this hearing is included in the Record.

a trial court reviewing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) must determine whether the plaintiff has established that jurisdiction exists by a preponderance of the evidence." *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 106 (2023) (citation omitted). "When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694 (2005) (citation and internal quotation marks omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Real Time Resols., Inc. v. Cole*, 293 N.C. App. 632, 635 (2024) (citation omitted).

"If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Vlassis v. Nissan N. Am., Inc.*, 297 N.C. App. 560, 565 (2024) (citation omitted). "When the record contains no findings of fact, it is presumed that the court on proper evidence found facts to support its judgment." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694 (citation modified). Thus, when the "record contains no indication that the parties requested that the trial judge make specific findings of fact[,]" this Court must "presume that the trial judge made factual findings sufficient to support her ruling" and "review the record to determine whether it contains any evidence that would support the trial judge's conclusion that the North Carolina

courts may exercise jurisdiction over defendants without violating defendants' due process rights." *Id.* at 695.

Here, because the trial court made no findings of fact, and Defendant does not contend it requested findings of fact, we are bound to "presume that the trial judge made factual findings sufficient to support her ruling" and thus, we turn to review the Record "to determine whether it contains any evidence that would support the trial judge's conclusion" that the North Carolina courts may exercise jurisdiction over Defendant without violating its due process rights. *See id.*

### IV. <u>Analysis</u>

On appeal, Defendant argues the trial court erred in denying its motion to dismiss for lack of personal jurisdiction. Specifically, Defendant contends it does not have sufficient minimum contacts with North Carolina to be subject to personal jurisdiction. We disagree.

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "The primary concern of the Due Process Clause as it relates to a court's jurisdiction over a nonresident defendant is the protection of an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302 (2020) (citation modified).

For North Carolina courts to exercise personal jurisdiction over "a nonresident defendant, (1) there must be statutory authority for the exercise of jurisdiction, and (2) the nonresident defendant must have sufficient contacts with this State such that the exercise of jurisdiction does not violate the federal due process clause." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614–15 (2000). North Carolina's Long Arm Statute, N.C.G.S. § 1-75.4 (2023), "grants North Carolina's courts specific personal jurisdiction over defendants to the extent allowed by due process." *Bartlett v. Est. of Burke*, 285 N.C. App. 249, 256 (2022) (citation and internal quotation marks omitted). Our Long Arm Statute provides, in relevant part, that a trial court will have personal jurisdiction over a nonresident defendant if that defendant "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d). "[W]hen evaluating the existence of personal jurisdiction pursuant to [N.C.]G.S. § 1-75.4(1)(d), the question of statutory authorization collapses into the question of whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Bruggeman*, 138 N.C. App. at 617 (citation modified).

In order to satisfy due process, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). "Minimum

contacts are established through some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schaeffer*, 384 N.C. at 107 (citation and internal quotation marks omitted).

"Minimum contacts may give rise to one of two forms of jurisdiction: general or specific jurisdiction." *Id.*; *see also Vlassis*, 297 N.C. App. at 567 (explaining there are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction" (citation omitted)). "General jurisdiction requires that a defendant's affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Schaeffer,* 384 N.C. at 107 (citation modified). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name purposeful availment." *Ford Motor Co.*, 592 U.S. at 359 (citation omitted). "The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Vlassis*, 297 N.C. App. at 567 (citation omitted).

Our courts look at the following factors in determining whether minimum contacts exist:

> (1) the quantity of the contacts, (2) the nature and quality

of the contacts, (3) the source and connection of the cause
of action to the contacts, (4) the interest of the forum state,
and (5) the convenience to the parties.

*Banc. Of Am. Sec. LLC*, 169 N.C. App. at 696 (citation omitted). After a trial court concludes "that a defendant has purposefully established minimum contacts within the forum State, the [trial] court must also consider those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 696 (citation and internal quotation marks omitted).

Additionally, "the plaintiff has the burden of proving prima facie that a statutory basis for jurisdiction exists." *Wyatt v. Walt Disney World, Co.,* 151 N.C. App. 158, 162–63 (2002) (citation modified). "[I]f the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations in the complaint can no longer be taken as true or controlling and [the] plaintiff cannot rest on the allegations of the complaint." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694 (citation modified). When this happens, the trial court "then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." *Id.* at 693–94.

In *Fungaroli v. Fungaroli*, after the plaintiff filed her complaint, the defendant moved to dismiss for lack of personal jurisdiction. 51 N.C. App. 363, 364 (1981). The evidence before the trial court came from "the parties' pleadings" and from an

affidavit from the plaintiff and an affidavit from the defendant. *Id.* at 363. The trial court subsequently denied the defendant's motion to dismiss. *Id.* at 364. On appeal, the defendant maintained "that the only evidence offered by [the] plaintiff with respect to the issue of personal jurisdiction were her statements in her affidavit." *Id.* at 367. The defendant argued the evidence presented by the plaintiff and the defendant were directly in conflict, and "since the record revealed no means by which the conflict in the evidence could be resolved and since the evidence was of equal weight, the trial court erred in ruling in favor of [the] plaintiff, she being the party with the burden of proof." *Id.* This Court affirmed the trial court's decision, and held that

> [a]lthough the trial court in the instant case did not actually make findings of fact in support of its order, we will presume that the trial court did find facts to support its decision and order. Therefore, we must assume that the trial court after reviewing the pleadings and affidavits of both parties decided to take as true [the] plaintiff's contentions.

*Id.*

Here, Plaintiff filed a verified complaint, which the trial court may take as evidence as an affidavit. *See Vlassis*, 297 N.C. App. at 565; *see also Wilson v. Wilson*, 191 N.C. App. 789, 795 (2008) ("A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." (citation omitted)). Plaintiff's verified complaint alleged

Defendant was subject to personal jurisdiction in North Carolina because, "[u]pon information and belief, Defendant [] conducts business in North Carolina by directing goods to individuals and businesses residing in the state." Defendant then presented counter evidence through Donegan's affidavit that although Defendant "is registered to do business in North Carolina[,]" Defendant lacks any further connection and "has no continuing or systemic contacts with the State of North Carolina."

Indeed, Plaintiff filed a response to Defendant's motion to dismiss that was not verified, and we cannot presume the information in the response was admissible as evidence before the trial court because it was unverified. *See Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 634 (2007) ("Factual allegations in [the d]efendants' unverified answer are not competent evidence; therefore, we assume the trial court did not consider these and do not consider them on appeal."). Thus, we are left with two affidavits as evidence before the trial court—Plaintiff's verified complaint and Defendant's submitted affidavit—and where the "trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Vlassis*, 297 N.C. App. at 565 (citation omitted). Because the Record contains no findings of fact, we are left to review the evidence before the trial court to determine whether the trial court "found facts to support its judgment." *See Banc of Am. Sec. LLC*, 169 N.C. App. at 694.

Here, while Plaintiff alleged in its complaint that Defendant "direct[s] goods to individuals and businesses residing in the state[,]" Donegan countered in his affidavit

that Defendant "did not manufacture, sell, or contract with any North Carolina resident or entity related to the subject aircraft or the subject aircraft parts in this action"; "does not advertise or market aircraft products or services in North Carolina or to residents in North Carolina"; and "does not target North Carolina residents through its online presence[.]" Defendant, however, did not provide any evidence to controvert Plaintiff's allegation that Defendant was registered to do business in North Carolina.

Regarding this registration evidence, Plaintiff argues Defendant "consented to the trial court's exercise of personal jurisdiction by procuring and maintaining a certificate of authority to do business in North Carolina." Although North Carolina has never held that a certificate of authority—alone—subjects a company to jurisdiction to North Carolina courts, Plaintiff argues that the United States Supreme Court's recent decision in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), and the United States Eastern District Court of North Carolina's decision in *Espin v. Citibank, N.A.*, 2023 WL 6447231 (E.D.N.C. Sept. 29, 2023), support this notion. We agree.

In *Mallory*, the Supreme Court held a defendant company consented to Pennsylvania personal jurisdiction by registering to do business in Pennsylvania, and that exercising personal jurisdiction over the defendant company did not violate due process. 600 U.S. at 144. In concluding the defendant company had consented to be subject to Pennsylvania courts, the Supreme Court explained that "Pennsylvania law

is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Id.* at 134 (citing 42 Pa. Cons. Stat. § 5301(a)(2)(i)).

Our statutes provide that "[a] foreign corporation may not transact business in this State until it obtains a certificate of authority from the Secretary of State[,]" N.C.G.S. § 55-15-01(a) (2023), and if it fails to obtain a certificate but proceeds to transact business, the foreign corporation shall not be "permitted to maintain any action or proceeding in any court of this State[,]" N.C.G.S. § 55-15-02(a). Once it has a certificate of authority, the foreign corporation "must maintain a registered office and registered agent as required by Article 4 of Chapter 55D of the General Statutes and is subject to service on the Secretary of State under that Article." N.C.G.S. § 55-15-07 (2023). The "certificate of authority authorizes the foreign corporation to which it is issued to transact business in this State[.]" N.C.G.S. § 55-15-05(a) (2023). Although North Carolina law, unlike Pennsylvania law, does not explicitly state that foreign corporations consent to personal jurisdiction as part of registering to do business in the state, North Carolina law does provide that the corporation "has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character." N.C.G.S. § 55-15-05(b).

After *Mallory* was decided, the United States District Court of the Eastern

District of North Carolina was presented with the same question as presented here—whether a defendant foreign company consented to jurisdiction in North Carolina as a result of obtaining a certificate of authority. *Espin, N.A.*, 2023 WL 6447231, at *3; *see also Skinner v. Preferred Credit,* 172 N.C. App. 407, 413 (2005), *aff'd*, 361 N.C. 114 (2006) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."). In holding that the defendant foreign company, Citibank, had consented to North Carolina jurisdiction by obtaining a certificate of authority, the court reviewed key holdings from three older North Carolina Supreme Court cases. *Espin*, 2023 WL 6447231, at *3. The *Espin* court first reviewed the North Carolina Supreme Court's holding in *Oliver v. U.S. Fid. & Guar. Co*, which provides:

> [W]hen a state, by its statutes, has established and provided a method of personal service of process on foreign corporations doing business therein, one that is reasonably calculated to give full notice to such companies of the pendency of suits against them, these provisions are to be regarded as conditions on which they are allowed to do business within the state, and when they afterwards come into the state and enter on their business they are taken to have accepted as valid the statutory method provided, and *such a service will be held to confer jurisdiction.*

*Id.* at *3 (quoting *Oliver v. U.S. Fid. & Guar. Co.*, 174 N.C. 417 (1917)) (emphasis added). Next, the *Espin* court highlighted *Steele v. W. Union Tel. Co.*, 206 N.C. 220 (1934), in which our Supreme Court held:

> [W]hen a foreign corporation has property in this state and is here present transacting its corporate business through

local agents, such corporation is amenable to service of process according to the provisions of C. S.[2] § 483 . . . and that this statute in the respect here assailed neither offends against the commerce clause of the Federal Constitution (art. 1, § 8, cl. 3) nor runs counter to the Fourteenth Amendment.

*Espin*, 2023 WL 6447231, at *4 (quoting *Steele*, 206 N.C. at 587). Finally, the *Espin* court noted that in 1955, our Supreme Court held

that a nonresident has access to the courts of this State is not debatable. That he can sue a foreign corporation is also beyond dispute. But to bring the foreign corporation into court[,] the service of process must be made upon an officer or agent as defined in [N.C.]G.S. [§] 1-97, and in the following cases only: (1) Where it has property in this State; or (2) where the cause of action arose in this State; or (3) where the service can be made personally upon some officer designated in [N.C.]G.S. [§] 1-97.

*Espin*, 2023 WL 6447231, at *4 (quoting *Babb v. Cordell Indus., Inc.*, 242 N.C. 286, 288 (1955)). After reviewing the three key holdings in *Oliver*, *Steele*, and *Babb*, the *Espin* court held,

[i]n light of *Mallory*, North Carolina's statutory requirements[,] which demand, among other things, that foreign corporations be held to the same privileges and duties as domestic corporations, coupled with the undisturbed North Carolina Supreme Court precedent cited above, is sufficient to demonstrate that this [c]ourt has general personal jurisdiction over Citibank.

*Id.* at *4. The court further noted that "this conclusion does not offend due process,

---

[2] C.S. refers to "Consolidated Statutes" of North Carolina, which we now refer to as "N.C.G.S."

even if it 'took [Citibank] by surprise[,]'" *see id*. at \*4 (quoting *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.,* 243 U.S. 93, 95 (1917)), "as Citibank has 'taken full advantage of its opportunity to do business in [North Carolina,]'" *see id.* \*4 (quoting *Mallory*, 600 U.S. at 141).

We also find Georgia's case law to be instructive. Since 1992, Georgia's Supreme Court has held that registration to do business in the state subjects foreign corporations to general jurisdiction in Georgia. *See Allstate Ins. Co. v. Klein*, 262 Ga. 599, 601 (1992). The Georgia statute in *Klein*, which contains similar language to our statute, provides:

> A foreign corporation with a valid certificate of authority has the same but no greater rights under this chapter and has the same but no greater privileges under this chapter as, and except as otherwise provided by this chapter is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

OCGA § 14–2–1505(b) (2025); *see also* N.C.G.S. § 55-15-05(b). The *Klein* court explained that, under Georgia's Long Arm Statute, the term

> "nonresident" includes . . . a corporation which is not organized or existing under the laws of this state *and is not* authorized to do or transact business in this state at the time a claim or cause of action . . . arises.

*Klein*, 262 Ga. at 601 (quoting OCGA § 9–10–90) (emphasis in original). The court reasoned that because foreign corporations that were registered to do business in Georgia were "authorized to do or transact business," they were "'resident[s]' for

purposes of personal jurisdiction over that corporation in an action filed in the courts of this state[,]" and "[a]s a resident, such a foreign corporation may sue or be sued to the same extent as a domestic corporation." *Id.* at 601 (footnote omitted). This holding was reaffirmed in 2021 in *Cooper Tire & Rubber Co. v. McCall.*, 312 Ga. 422, 437 (2021) ("[B]ecause Cooper Tire is registered and authorized to do business in Georgia, Cooper Tire is currently subject to the general jurisdiction of our courts under *Klein*'s general-jurisdiction holding, which we have decided to leave in place.").

Similarly, here, North Carolina's Long Arm Statute provides that state courts will have personal jurisdiction "[i]n any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party . . . [i]s a *domestic corporation*[.]" N.C.G.S. § 1-75.4(1)(c) (2023) (emphasis added). Thus, because N.C.G.S. § 55-15-05(b) states that a registered foreign corporation "has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a *domestic corporation* of like character[,]" we conclude a registered foreign corporation may sue or be sued to the same extent as a domestic corporation and is subject to personal jurisdiction. *See* N.C.G.S. § 55-15-05(b) (emphasis added); *see also* N.C.G.S. § 1-75.4(1)(c).

Guided by *Mallory*, North Carolina statutes, *Espin*, and *Klein*, we hold a foreign corporation that obtains a certificate of authority consents to general personal jurisdiction in North Carolina; therefore, we affirm the trial court's order denying

Defendant's motion to dismiss. *See Mallory*, 600 U.S. at 144; N.C.G.S. § 55-15-05(b); N.C.G.S. § 1-75.4(1)(c); *see also Espin*, 2023 WL 6447231, at *3; *Klein*, 262 Ga. at 601.

## V. <u>Conclusion</u>

For the foregoing reasons, we conclude the trial court properly denied Defendant's motion to dismiss because Defendant consented to general personal jurisdiction by registering to do business in North Carolina.

AFFIRMED.

Judges COLLINS and CARPENTER concur.